COMMODITIES EXPORT COMPANY, a Michigan Corporation, Plaintiff–Appellant,

v.

U.S. CUSTOMS SERVICE, an Agency of the U.S. Government, Defendant–Appellee.

No. 88–2068.

United States Court of Appeals, Sixth Circuit.

Argued July 27, 1989.

Decided Oct. 24, 1989.

---

Roger E. Craig (argued), Naples, Fla., Walter H. Lubienski, Lubienski, Lubienski & Lubienski, Detroit, Mich., for plaintiff-appellant.

Carolyn Bell Harbin, Asst. U.S. Atty. (argued), Detroit, Mich., for defendant-appellee.

Before MERRITT, Chief Judge, NELSON, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Chief Judge.

Commodities Export Company appeals from the decision of the District Court holding that the District Court lacked juris-diction over Commodities' petition for an injunction barring the United States Customs Service from enforcing certain claims. Without reaching a due process issue present in the case, the District Court held that the controversy was within the exclusive jurisdiction of the Court of International Trade. We conclude that the District Court reached a legally erroneous conclusion in its interpretation of 28 U.S.C. § 1582(2), and that it prematurely decided other issues without holding a hearing on Customs' motion to dismiss. Accordingly, we vacate the decision below and remand this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Commodities operates a "duty-free" shop in Detroit, Michigan, in which U.S. excise taxes and tariffs are not charged on the goods sold. Its facility is said by the parties to be the only duty-free shop located on the U.S. side of the "point of no return" —that is, the point at which a customer carrying goods recently purchased from the duty-free shop must take them through a Customs checkpoint in order to bring them into the United States and insert them into the stream of commerce here. It appears that the Detroit office of the Customs Service was unwilling to allow Commodities to operate at its unusual location because of the heightened risk of "runaways." "Runaways" are goods that have been sold at a duty-free shop without federal and state taxes and duties on the supposition that the goods would immediately be taken out of the United States, but that are taken into the United States instead.

Commodities sued Customs in District Court in 1976 and obtained a court order commanding Customs to allow Commodities to operate a duty-free shop on the United States side of the point of no return. The order specified the parties' respective duties in the maintenance of a surveillance regime that would allow Customs to ensure that goods sold by Commodities did not "run away." In 1985 that court order was amended, pursuant to an agreement of the parties, to allow Commodities to videotape

its operations as a less expensive means of providing documentation of runaways. The District Court has retained jurisdiction over the original dispute.

Since the original order, Customs has brought several assessments for liquidated damages on Commodities' warehouse bond. As a duty-free shop, Commodities is required to maintain this bond by federal law. 19 U.S.C. § 1555. The bond is meant to guarantee that Commodities will comply with the numerous regulations for storing merchandise in and withdrawing it from its bonded warehouse. 19 U.S.C. § 1623(a). The Secretary of the Treasury is authorized to affix penalties to breaches of the conditions of a bond, and in particular may assess liquidated damages on the bond. 19 U.S.C. § 1623(b)(1).

Acting under this authority, the Customs Service notified Commodities of more than twenty assessments for liquidated damages. Following the District Court, we divide these into five groups. The first (# 1), dated June 14, 1983, assesses $775.35 on the grounds of inventory shortages that allegedly violated Customs regulations. The second (# 2), dated March 21, 1983, assesses $6,293.96 on the grounds of inventory shortages and on the grounds that certain goods were not marked in accordance with regulations. The third (# 3), dated April 4, 1986, assesses $141,868.00 on the grounds of inadequate recordkeeping and marking of merchandise, unreported shortages and unreported breakage. The fourth (# 4) is a series of 17 assessments, dated November 28, 1986 and totalling $850,000: it is not immediately clear what alleged breaches underlie these assessments. The fifth (# 5), dated June 15, 1987, assesses $5,217.50, the total price of goods sold during a gap in the videotape of Commodities' operations on May 21, 1987.

Commodities seeks an injunction against the enforcement of four of these assessments, # 1, # 2, # 3 and # 5. All parties appear to agree that the fourth assessment was settled, though Commodities asserts that Customs officials refused to give it a valid receipt until this suit was filed. The parties disagree about the status of # 3.

Customs asserts that it is under administrative review and therefore is ripe neither for enforcement nor for this contest. Commodities asserts that this claim is settled because Customs cashed its check for $668.00 made out with a restrictive endorsement stating that it was payment in full. It appears that, as to # 3, Commodities seeks an injunction barring Customs from continuing to treat this claim as unsatisfied; it also argues that the claim is improper because it seeks to enforce internal regulations of Customs that are not binding on the public.

Setting aside for the moment the difficulties attendant on the specific assessments enumerated above, Commodities' basic complaint before the District Court was that it had done everything required of it to obtain administrative review of the assessments and that Customs has ignored all its pleas for due process and has proceeded to enforce the claims without administrative review. Commodities contends that it sought administrative review by what it deemed to be the proper means under the Customs regulations, 19 C.F.R. § 172. This section of the Customs regulations prescribes the means by which a private party subject to liquidated damages on a Customs bond may petition for relief. Commodities emphasizes that each notice of liquidated damages it received from Customs specified that, in order to prevent the assessment from becoming final and subject to enforcement, Commodities was required to take recourse to the petition process set forth in 19 C.F.R. § 172. In each petition, Commodities also requested a hearing under the APA and correct information about the challenged claims under the Freedom of Information Act.

Commodities argues that, after refusing to give due consideration to its petitions, Customs proceeded to enforce the assessments. Although the District Court appears not to have ruled on this issue, the record before us indicates that Customs has set its collection machinery in motion, though it has not actually sued on the bond. On March 20, 1988, Customs sent Commodities final demands for payment stating that enforcement proceedings

would commence in 10 days. JA 160–61. Commodities filed its motions in District Court nine days later. After the District Court denied Commodities' motion for a stay pending appeal, Customs made a formal demand for payment from Commodities' surety. JA 196.

Commodities also makes a number of allegations tending to show that Customs does not plan to restrict its actions to efforts to enforce the assessments. Commodities alleges that Customs officials have threatened to "terminate Commodities' business by refusing Customs service to Commodities." Petition for Supplemental Relief, Paragraph 11; JA 17. Commodities also alleges that a Customs official threatened to "do everything in his power" to make it impossible for Commodities to operate as a duty-free shop, in part on the grounds that the video monitoring system installed by order of the District Court violated the Customs laws. Petition for Supplemental Relief, Paragraph 17, JA 19; R. 46, Ex. T, JA 88. Commodities claims that the official making the latter threat indicated that "he was retiring soon and had nothing to lose," creating an inference that he intended to exceed the scope of his legitimate authority or to pursue an illegitimate end by the use of otherwise legal means.

## II. DECISION OF THE DISTRICT COURT

The District Court held that it lacked jurisdiction over these claims because the Customs Court Act of 1980 vested exclusive jurisdiction over this species of dispute in the newly created Court of International Trade. It made two separate analyses, one applying 28 U.S.C. § 1581(a)[1] to assessment # 5 and another applying 28 U.S.C. § 1582(2)[2] to assessments # 1 and # 2. First, analyzing claim # 5 (involving the videotape system's failure) the District Court reasoned that a duty-free shop was a bonded warehouse established under 19 U.S.C. § 1555; that the Secretary of the Treasury was empowered by 19 U.S.C. § 1623(a) and (b)(1) to regulate such bonded warehouses and to assess against the warehouse bond liquidated damages for violations of relevant regulations; that liquidated damages assessments were subject to administrative review under 19 C.F.R. § 172 (petition process for objecting to liquidated damages) *and* 19 U.S.C. §§ 1514, 1515 and 19 C.F.R. § 174 ("protest" procedure for obtaining administrative review); and finally that Congress has vested exclusive jurisdiction over appeals from decisions on protests in the CIT, 28 U.S.C. § 1581(a).

The District Court did not analyze the difference between the *petition* process set forth at 19 C.F.R. § 172 and the *protest* procedure set forth at 19 U.S.C. §§ 1514, 1515 and 19 C.F.R. § 174. Here we will only observe that the petition process is required of those who wish to object to an assessment of liquidated damages, and triggers a reconsideration of a liquidated damages assessment by the district director of the Customs office that issued the assessment and in some cases by the Commissioner of Customs. The appropriate Customs official is empowered to cancel the assessment and to give other appropriate relief, but is not required to hold a hearing. Beyond its provision for a first

---

**1.** Section 1581 of Title 28 establishes CIT jurisdiction over civil actions against the United States and its agencies and officers. The pertinent subsection is as follows:

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

28 U.S.C. § 1581(a). Section 515 of the Tariff Act of 1930 is codified at 19 U.S.C. § 1515, which provides for administrative review of protests against decisions of customs officers filed under 19 U.S.C. § 1514. See below.

**2.** Section 1582 of Title 28 establishes CIT jurisdiction over civil actions commenced by the United States. The relevant language is:

The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
(2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury.

28 U.S.C. § 1582.

and a second supplemental petition, 19 C.F.R. § 172 does not indicate that an adverse decision on a liquidated damages petition is subject to further administrative or judicial review. The protest procedure, on the other hand, is available for certain specified actions of Customs, 19 U.S.C. § 1514(a), 19 C.F.R. § 174.11. This procedure includes provision for further review of an adverse initial decision on the protest, 19 C.F.R. § 174.23–27, and is the predicate for judicial review in the CIT under 28 U.S.C. § 1581(a). In brief, the petition process appears to be a procedure allowing a kind of right of reply to the decisionmaker, while the protest procedure sets in motion the full process of administrative and judicial review. Without exploring these distinctions between the two processes or specifying how the relevant statutes and regulations apply to this case, the District Court ruled that Commodities had access to both procedures, and thus could have obtained judicial review in the CIT by the protest procedure.

Second, ruling on claims # 1 and # 2, the District Court held that these were civil actions commenced by Customs to recover on an importation bond, and thus were within an explicit grant of exclusive jurisdiction to the CIT at 28 U.S.C. § 1582(2). It held that Commodities' argument that these assessments were brought after expiration of the relevant limitations period was nothing more than a defense to this action, and thus did not create jurisdiction which was otherwise lacking. Finally, it rejected Commodities' argument that duty-free shops are not in the business of importation and thus are outside the reach of § 1582(2).

The District Court declined to rule on claim # 4 because it found that it was still under administrative review. On Commodities' post-judgment motion for reconsideration, as amended, the District Court refused to reconsider its decision, to grant a stay of enforcement, and to transfer this case to the CIT pursuant to 28 U.S.C. § 1631.

### III. JURISDICTION

We conclude that the District Court's analysis of the jurisdictional issue was legally incorrect in one respect and that it was otherwise premature. In doing so we acknowledge the special nature of this case. First, no case has been cited to us, and our research reveals no case, in which the jurisdiction of the Court of International Trade has been invoked, either successfully or unsuccessfully, in a dispute involving the management of a bonded warehouse maintained by a duty-free shop. Second, no case has been cited to us, and our research reveals no case, in which a private party subject to liquidated damages on a bond required by Customs has availed itself of the protest procedure and has then sought judicial relief, thus raising the issue of exclusive CIT jurisdiction. In at least these two respects, therefore, this case presents issues of first impression. And third, this case is, it is hoped, factually unique: Commodities not only contests specific assessments for liquidated damages, but asserts that the Detroit office of the Customs Service has set out to use and abuse its regulatory powers in order to put Commodities out of business. This due process claim, which has been present in this case since Commodities stated it in its petition for an injunction, has apparently been ignored by Customs and by the District Court. All three of these difficulties have direct jurisdictional implications which may, once the relevant facts are found, require the District Court to exercise jurisdiction over this case.

In remanding this case, however, we note that the District Court was confronted—as we have been—by confusing and unhelpful briefing and analysis on both sides. The customs laws and regulations are very technical and complex and the growing body of law on CIT jurisdiction is nowhere directly dispositive of this case. In such circumstances a court hopes for less dismissive treatment of the issues than the Customs Service has given them here, and for less inflammatory, more analytical treatment of the issues than Commodities has provided. We hope that, on remand, some of the now intractable difficulties of

this case can be clarified by fully adequate fact-finding and more carefully explicated application of the law to the facts.

**A. APPLICATION OF 28 U.S.C. § 1582(2).** Section 1582(2) of Title 28 is set forth in footnote 2 above. The District Court held that jurisdiction over Commodities' contest of claims #1 and #2, both arising from alleged recordkeeping improprieties and inventory shortages, is vested in the CIT by virtue of this statute.

Before turning to the merits of this jurisdictional issue, we note that the District Court founded its jurisdictional ruling on claims #1 and #2 on 28 U.S.C. § 1582(2), while it provided a separate analysis under 28 U.S.C. § 1581(a) and related statutes for holding that the CIT has exclusive jurisdiction over the liquidated damages assessment arising from the videotape failure. We make no such distinction between these two groups of claims. All are assessments of liquidated damages on Commodities' warehouse bond, and all are based on breaches of the bond in matters relating to the required maintenance of the warehouse. Commodities seeks the same relief with respect to all the claims, and implicates all of them in its allegations that Customs' general course of conduct in regulating Commodities' Detroit store violates the due process clause of the Fifth Amendment.

We do not agree that § 1582(2) is dispositive of any issue in this case. This is not an action "commenced by the United States," and it is not clear to us that, if the United States were to bring a civil action to enforce its liquidated damages claims, such an action could be said to have "arise[n] out of an import transaction." The application of this statute to the present dispute reveals the District Court's failure to discern the centrality of the Fifth Amendment due process issue and the difficulty of the factual and legal issues that underpin it. It is to that issue that we now turn.

**B. DUE PROCESS.** On appeal, Commodities argues that it was entitled to a hearing in the Court below on *all* the jurisdictional arguments it advances. We conclude that the District Court did indeed err in failing to hold a hearing on Commodities' due process claims; its arguments asserting statutory grounds for district court jurisdiction arise in different postures and we give them a separate discussion.

■■■ The District Court dismissed this case on Customs' motion, brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss for lack of subject matter jurisdiction. Rule 12(d) contemplates that a trial court entertaining a motion for dismissal under Fed.R.Civ.P. 12(b), and having before it the opponent's application for a hearing on the motion, will do one of two things: defer the motion to trial or hold a preliminary hearing on it. Again and again courts of appeal have remanded cases in which a trial judge took a third alternative, of ruling on a Rule 12(b) motion before trial without a hearing. These cases establish a clear rule: a motion to dismiss under Fed.R.Civ.P. 12(b)—and in particular a motion citing a jurisdictional defect under Fed.R.Civ.P. 12(b)(1)—requires a preliminary hearing or hearing at trial to determine any disputed facts upon which the motion or the opposition to it is predicated. *Augustine v. United States,* 704 F.2d 1074, 1079 (9th Cir.1983) (12(b)(1) motion); *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 n. 1 (5th Cir. Unit A) (12(b)(1) motion), *cert. dismissed,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Dougherty v. Harper's Magazine Co.,* 537 F.2d 758, 761 (3d Cir.1976) (12(b)(6) motion); *Harmon v. Superior Court of Los Angeles,* 307 F.2d 796, 797 (9th Cir.1962) (12(b)(1) motion); *Stauffer v. Exley,* 184 F.2d 962, 967 (9th Cir.1950) (jurisdictional facts disputed); *see* Wright & Miller, 5 *Federal Practice and Procedure* § 1373 at 714 (1969). The standard to be applied in determining whether a hearing is required is equivalent to that used under Fed.R. Civ.P. 56(c), in ruling on a motion for summary judgment: that is, where genuine issues of material fact exist, they must be submitted to decision on the evidence. *Cook v. Providence Hosp.,* 820 F.2d 176, 178 (6th Cir.1987); *Augustine,* 704 F.2d at 1079. Only "where the facts are relatively simple, [and] substantially uncontroverted,

and the law is not complex," is a district court justified in ruling on a motion under Fed.R.Civ.P. 12(b)(1) without pausing to make findings on disputed questions of fact. *Cook,* 820 F.2d at 178.

█ In this case the District Court ordered a hearing, but proceeded to rule on the motion without convening the hearing or entering an order indicating why no hearing was necessary. We believe a hearing was required on each of three distinct elements of Commodities' due process claim.

1. *Continuing jurisdiction over previous orders of the District Court.* Commodities argues that the motions underlying this appeal are predicated on its allegation that, throughout the challenged course of conduct, Customs sought to ruin Commodities' business by bringing meritless or inflated assessments for liquidated damages in violation of the due process clause, and thus to evade the District Court's earlier order compelling it to allow Commodities to run a duty-free shop. Commodities' vice-president, also its general counsel, swore to these allegations in the petition for supplemental relief. The District Court therefore had before it proof of an evasion of a valid and binding court order; if the Court had found that this allegation was true, jurisdiction would arise from its own continuing jurisdiction over the original dispute. We conclude that it was not enough for the District Court to reject the argument that the injunction sought here is supplemental to its prior orders without addressing these factual allegations in Commodities' petition. JA 182 n. 5. We therefore remand this issue for factfinding and a ruling.

2. *Availability of protest procedure and thus of judicial review in the CIT.* We believe the District Court has not found sufficient facts for us to test the correctness of its unexplained conclusion that Commodities has access to administrative and CIT review by means of the protest procedure set forth at 19 U.S.C. §§ 1514, 1515 and at 19 C.F.R. § 174.

As we stated above, the protest procedure, if properly invoked, opens the door to the CIT for judicial review of a final, adverse decision by the Customs Service. Commodities cannot now file a protest, as it admits in its brief, because the period of limitations applicable to protests has expired. 19 C.F.R. § 174.12(e). But if indeed Commodities at one time had access to the protest procedure to contest the liquidated damages claims in this case, it had the power to frame a case within the exclusive jurisdiction of the CIT. 28 U.S.C. § 1581(a). It would not be proper for the District Court to allow a party to evade Congress' unequivocal intention to make the CIT's jurisdiction exclusive, merely by waiting until the limitations period for protests had elapsed and then suing in district court. Thus, if Commodities had, but failed to avail itself of, the right to institute a timely protest, it should be held to have waived judicial review of its specific disputes over the liquidated damages assessments in this case. We construe the District Court's decision in this case to hold that such a waiver has occurred.

The District Court failed to examine two arguments which Commodities makes to show that it never had access to the protest procedure. Both present mixed questions of fact and law, so we remand them for hearing and full analysis below.

*First,* Commodities argues, liquidated damages assessments are not subject to protest at all. Because its attempt to resist those assessments is therefore not within the jurisdictional grant of 28 U.S.C. § 1581(a), and is not within any other grant of jurisdiction to the CIT, Commodities argues, the District Court retains jurisdiction of this matter. This is a fundamental due process claim, then, involving the availability of judicial review over an agency's determination depriving a corporate person of property.

We believe Commodities, in making this argument, has raised a colorable claim under the due process clause. It is possible that an objection to liquidated damages on a duty-free shop's warehouse bond is not a "matter[ ] subject to protest." 19 C.F.R. § 174.11 (heading). The only plausible category in which such a dispute could fit is

set forth at 19 U.S.C. § 1514(a)(3) and 19 C.F.R. § 174.11(c): "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." While the broadly sweeping language of this provision suggests that a liquidated damages assessment is subject to the protest procedure, Commodities argues that such an assessment is not a "charge or exaction" in the technical sense in which those terms are used in the Customs laws and regulations. As support for this argument, for instance, Commodities refers to 28 U.S.C. § 2637(a), which requires that a party wishing to file a protest must first prepay any "liquidated duties, charges or exactions" and which does not refer directly to liquidated damages. A similar argument has already been advanced in a prior case, *United States v. Utex Int'l Inc.*, 857 F.2d 1408 (Fed.Cir.1988), but the court in that case ruled on other grounds. *Id.* at 1413–14. No case cited to us settles the specific question Commodities raises here, though our review of the cases interpreting 19 U.S.C. § 1514(a) and 19 C.F.R. § 174.11 indicates that the question whether a given action of the Secretary of the Treasury in the customs area is a protestable "charge or exaction" is by no means a foregone conclusion.

We conclude that Commodities raises a mixed question of fact and law when it asserts that its effort to resist the liquidated damages assessments involved in this case was not subject to protest and thus was never within the scope of CIT jurisdiction. The District Court, by failing to address this question, has provided neither the necessary factfinding nor an adequate application of the law to the facts. We therefore remand this question to the District Court for its factfinding and decision.

*Second,* Commodities argues that, even if the liquidated damages claims were protestable, Customs mislead it into thinking that the only available route for obtaining review was the petition procedure set forth at 19 C.F.R. § 172 and described in Section II above. Because it relied on Customs' explicit directions that it must follow the petition procedure, and because Customs has engaged in lengthy delays in considering those petitions, the period of limitations for protests has long since elapsed. 19 C.F.R. § 174.12(e). Commodities thus asserts that Customs has made the protest procedure futile, taking affirmative steps that have had the effect of blocking Commodities' access to the CIT and depriving it of judicial review.

Here, again, Commodities raises a factual issue which, if decided in its favor, would give considerable color to its due process claim. Once again, we are confronted with a mixed question of fact and law, heretofore unresolved, which the District Court must reconsider on remand.

**C. STATUTORY SOURCES OF JURISDICTION.** In addition to its due process claim, Commodities makes several arguments seeking to found district court jurisdiction on statutory sources.

First, Commodities makes certain arguments founded on 28 U.S.C. § 1352 and 28 U.S.C. § 1355. The District Court nowhere rules on the application of these statutes to this case, for the simple reason that Commodities did not raise them below. R. 49, 51. Because these issues were not ruled on by the District Court, they are not subject to an appeal. Only because these are jurisdictional issues, we conclude that they are not waived and may be raised on remand.

Finally, Commodities argues that district court jurisdiction is founded on its FOIA requests, on the ground that district courts, not the CIT, have original jurisdiction in disputes under FOIA. 5 U.S.C. § 552(a)(4)(B). Customs successfully refutes these arguments by pointing out that Commodities' petition conditioned its prayer for enforcement of its FOIA requests on the District Court's actual grant of other relief. Commodities' allegations that Customs has illegally failed to comply with FOIA requests may be relevant to its due process claim, as tending to prove the determination of officers in the Customs' Detroit office to harass Commodities. But jurisdiction over this case may not be founded solely on a prayer for additional

relief conditioned on a complaint over which the court otherwise lacks jurisdiction.

## IV.  TRANSFER

The District Court denied Commodities' motion for transfer of this case to the CIT, pursuant to 28 U.S.C. § 1631, without specifying its reasons.  It has been held an abuse of the district court's discretion under this statute for it to refuse to transfer without determining whether transfer would be "in the interest of justice." *Taylor v. Social Sec. Admin.*, 842 F.2d 232, 233 (9th Cir.1988).  Should the District Court conclude on remand, after a hearing and after detailing its findings and conclusions, that it lacks jurisdiction because of an exclusive jurisdictional power of the CIT, the Court shall proceed to give full consideration to any renewed motion for transfer filed by Commodities.

At oral argument counsel for Customs urged us, if we did not dismiss this appeal altogether, to remand this case to the District Court with an order that it shall transfer the case to the CIT for determination of the jurisdictional issues.  We are unable to do so under the terms of § 1631.  That statute permits a district court to transfer a case only after "find[ing] that there is a want of jurisdiction."

## V.  CONCLUSION

We vacate the judgment below and remand the jurisdictional questions arising from Commodities' due process claim, as set forth in Section III above, to the District Court, with no prejudice to any renewed motion for a transfer to the Court of International Trade under 28 U.S.C. § 1631, as set forth in Section IV above.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I agree that the judgment of dismissal must be vacated and the case remanded to the district court.  Regardless of the merits of Commodities' constitutional claim, however, I have difficulty understanding why the Court of International Trade does not almost certainly have exclusive jurisdiction of this action under 28 U.S.C. § 1581(i), and why the proper course for the district court to follow, on remand, would not almost certainly be to transfer the action to the Trade Court pursuant to 28 U.S.C. § 1631.

Under 28 U.S.C. § 1581(i), the Court of International Trade has "exclusive jurisdiction" over "any" civil action against the United States arising out of "any" federal law providing for, among other things, "(1) revenue from imports or tonnage; (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; ... (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3)...."  Former Assistant Secretary of the Treasury Eugene Rossides says that § 1581(i) was "evidently designed to assure that the new court, rather than the district courts, takes jurisdiction of any justiciable action challenging the administration of laws affecting import trade."  E. Rossides, *U.S. Import Trade Regulation* 537 (1986).

As far as I have been able to tell, Commodities can point to no facts the establishment of which would deprive the Court of International Trade of exclusive jurisdiction over the present case.  It seems to me that the case clearly arises out of the administration and enforcement of laws dealing with imports of merchandise.  If I am right in this, there is no need for an evidentiary hearing under Rule 12(d), Fed.R. Civ.P.  And although the district court might well find oral argument beneficial, the rule itself does not require it; motions to dismiss are "heard" all the time on papers filed by the parties, just as this court often hears and determines appeals without oral argument.

The possibility that the district court may have exercised jurisdiction properly when this case was originally filed in 1976, before enactment of the current statutory scheme, does not change my view that Commodities' request for the relief it now seeks ought to be determined by the Court

of International Trade. On the record before us, I see no reason why it would not be in the interest of justice to transfer the action to that court in accordance with the mandate of 28 U.S.C. § 1631. I agree that the question of a transfer under § 1631 needs to be addressed in the first instance by the district court, however, rather than this court, and I believe our remand to the district court is appropriate for that reason. If the district court does not consider a transfer appropriate, it needs to say why.