The GENERAL CONTRACTING & TRADING CO., LLC, Plaintiff, Appellee,

v.

INTERPOLE, INC., Defendant, Appellee,

v.

TRANSAMERICAN STEAMSHIP CORPORATION, Third–Party Defendant, Appellant.

Nos. 89–1842, 90–1115.

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1990.

Decided March 27, 1990.

Edward C. Radzik, New York City, with whom Gary S. Lenehan, Manchester, N.H., Donovan Maloof Walsh & Repetto, New York City, and Brennan & Caron, P.A., Manchester, N.H., were on brief, for third-party defendant, appellant.

Margaret H. Nelson, with whom Warren C. Nighswander, William M. Thomas, and Sulloway Hollis & Soden were on brief for defendant, appellee Interpole, Inc.

Richard W. Mable, with whom Powers & Hall, Professional Corp., Boston, Mass., was on brief for plaintiff, appellee General Contracting & Trading Co.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

These appeals collectively constitute a legal motley, arising in an odd fact/law posture and presenting a crazyquilt assortment of issues. We try, first, to gather the litigatory strands into a workable sort of yarn, and then to weave our way through the pattern of appellate inquiry, stitching up the cases' ravelled sleeve.

### Background

In 1980, appellee General Contracting & Trading Co. (GCT), a firm organized under the laws of the Sultanate of Oman, ordered 4,500 wooden utility poles from appellee Interpole, Inc., a New Hampshire corporation. The parties negotiated a pair of modified cost-and-freight contracts covering transport of the goods to Oman. The poles, crafted from southern pine, were never intended to reach New Hampshire. Instead, Interpole arranged to ship them from Mobile, Alabama to Mina Qaboos, Oman, on board the IOANNIS MARTINOS, a freighter owned and operated by appellant Transamerican Steamship Corporation (Trastco). A bill of lading was issued on October 9, 1980, subject to the terms of the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300–1315 (1987). The record is clear, however, that GCT's contracts with Interpole were subject not to COGSA but to the provisions of New Hampshire law.

The ensuing voyage was stormy in every sense of the word. The particulars need not concern us; it suffices to say that the consignment of utility poles did not reach Oman until March 1981. GCT asserted a claim for delay damages against its vendor and Interpole asserted a ricochet claim against Trastco. Some tentative accommodations were made without resort to litigation: Interpole paid $13,500 to GCT and Trastco paid $40,000 to Interpole in partial satisfaction of certain claims *inter sese*. Eventually, however, the parties' negotiations proved no more successful than the

voyage itself. And when the fabric of on-going negotiations disintegrated, conciliatory ploughshares were traded for litigatory swords.

### A Precis of the Docket

In our estimation, this decurtate summary of an admittedly convoluted collection of transactional facts is all that is necessary to put Trastco's appeals into proper perspective. We add it to a condensed chronology of certain critical events reflected by the docket entries and related records.

1. *May 28, 1985.* GCT sued Interpole in the United States District Court for the District of New Hampshire (Suit No. 1).

2. *October 8, 1985.* Having answered, Interpole moved for leave to file a third-party complaint for noncontractual indemnity against Trastco. The motion was granted.

3. *December 5, 1985.* The third-party summons and complaint was duly served on Trastco and received by Dennis Hamilton, a vice president. Trastco did nothing.

4. *January 8, 1986.* At Interpole's request, a default was entered against Trastco.

5. *September 16, 1986.* By this date at the latest, Trastco admits that it was fully aware of the entry of default.

6. *December 30, 1986.* Trastco moved for the first time to set aside the default. It also moved to dismiss the third-party complaint.

7. *January 30, 1987.* The district court denied both of the aforesaid motions.

8. *March 6, 1987.* The district court denied Trastco's motions for reconsideration.

9. *August 19, 1987.* Trastco sued Interpole for fraud and misappropriation (Suit No. 2).

10. *May 20, 1988.* By submission, Interpole confessed to a judgment in GCT's favor for $27,000 in Suit No. 1, contingent upon Interpole's enforcement of a default judgment against Trastco.

11. *May 23, 1988.* The district court approved the stipulation in Suit No. 1 and entered judgment on the primary complaint.

12. *October 6, 1988.* The court granted Interpole's motion for entry of a default judgment against Trastco in Suit No. 1, but deferred computation of the award and consolidated the two suits for a hearing on damages.

13. *May 16, 1989.* Interpole and Transamerican settled Suit No. 2 for $30,000 and so informed the district court.

14. *June 27, 1989.* The focus reverted to Suit No. 1. The district court assessed damages against Trastco on the third-party complaint in the sum of $43,276, including $16,276 in attorneys' fees. The court denied Trastco's motion to set off the $30,000 settlement (*see supra* entry # 13) against this award.

15. *July 27, 1989.* Trastco, filed its initial notice of appeal.[1]

### The Issues

Trastco's appeals are loomed from four threads of assigned error, viz., (1) that the district court abused its discretion in refusing to set aside the default in Suit No. 1; (2) that the judgments should have been offset against each other; (3) that there was no basis for an award of attorneys' fees to Interpole on its third-party complaint; and (4) that, in any event, the district court lacked in personam jurisdiction over Trastco and should have dismissed the third-party complaint out of hand. Because there is no perfectly satisfactory way sequentially to arrange the disparate components of this asseverational array, we address the issues in the order in which appellant chose to present them.

### Removal of the Default

We have no occasion to linger over Trastco's first imprecation. Being late may be

---

1. Because of concerns as to finality, not now germane, Trastco took a second appeal on the eve of oral argument. We consolidated the two appeals and are satisfied that our appellate jurisdiction has properly been invoked. It would therefore be pointless to differentiate between the two appeals.

fashionable in certain social circles, but law and high society are worlds apart. In legal matters, punctuality is a paramount virtue. Disregarding time constraints can, as these appeals illustrate, produce unfortunate consequences.

■ Under the Civil Rules, an entry of default may be set aside only "[f]or good cause shown." Fed.R.Civ.P. 55(c). We have recently visited the compendium of factors which a district court should consider in "analyz[ing] the quantum and quality of [a defaulted party's] 'cause' to see if it was 'good,' that is, if it warranted removal of an entry of default," *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989), and it would be pleonastic to rehearse that discussion here. It is enough to reemphasize that, while certain recurrent elements should be probed—the proffered explanation for the default; whether the default was willful, innocent, or somewhere in between; whether setting it aside would prejudice the movant's adversary; whether the movant possesses a meritorious defense; and the timing of the motion, *see id.; United States v. One Urban Lot, Etc.*, 865 F.2d 427, 429 (1st Cir.1989)—Rule 55(c) determinations are case-specific. They must, therefore, be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula. When all is said and done, " 'good cause' is a mutable standard, varying from situation to situation." *Coon*, 867 F.2d at 76.

■ In this instance, the district court observed that, once served, Trastco did nothing, the vice-president having simply "misplaced" the suit papers. It found that Trastco's default was the product of "negligence com[ing] perilously close" to willfulness and that, given the duration of the action and the "extensive discovery ... undertaken," Interpole would be "substantially prejudiced if the entry of default [were to be] vacated." The court also noted that appellant "waited approximately three and

one-half months" between discovery of the default and asking the court for relief, characterizing the delay as exhibiting a "lack of due diligence." For these reasons, and notwithstanding the presence of arguably meritorious defenses, the district judge refused to set aside the default.

■ In the absence of legal error, we review the trial court's denial of a Rule 55(c) motion solely for abuse of discretion. *See Coon*, 867 F.2d at 75 (collecting cases). We discern no such abuse in the case at bar. To the exact contrary, the district court demonstrated complete fidelity to the *Coon* standard. The court appears to have considered and weighed the full panoply of relevant circumstances and to have derived its findings from permissible, if not ineluctable, views of the record. Given particularly the lack of any tenable excuse for appellant's failure to answer, the length of time it dawdled after the problem surfaced, and the court's supportable finding of prejudice, the decision to leave Trastco smarting from self-inflicted wounds was well within the province of the court's discretion.

### Failure to Offset

■ Trastco polemicizes the district court's refusal to offset the judgment it obtained against Interpole in Suit No. 2 against the judgment Interpole won in Suit No. 1.[2] The parties agree that New Hampshire law provides the rule of decision on the question of setoff and we are free to accept that agreement uncritically. *See Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1079 (1st Cir.1989); *Moores v. Greenberg*, 834 F.2d 1105, 1107 n. 2 (1st Cir.1987). Scrutinizing the circumstances in light of New Hampshire's jurisprudence, we find no cognizable error.

For one thing, appellant too blithely treats the judgments as if they arose *in the same action*. While the lower court consolidated the suits for the purpose of

**2.** Not surprisingly, economic considerations lurk beneath the surface of the legal debate. Having suffered reverses, Interpole's corporate pockets are shallow, if not sewn altogether shut. Collection of the judgment in Suit No. 1 would not replenish Interpole's coffers, but would flow partly to GCT, *see supra* p. 4, entry # 10, and partly to Interpole's counsel, *see id.* entry # 14. Winning Suit No. 2 may, therefore, prove but a Pyrrhic victory for Trastco. On the other hand, Trastco is perceived to have a deep pocket.

assessing damages, Fed.R.Civ.P. 42(a), consolidation is merely a procedural device that does not merge separate suits or alter their individual character. *FDIC v. Caledonia Investment Corp.*, 862 F.2d 378, 381 (1st Cir.1988); *In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 441–42 (1st Cir.1972). We question whether New Hampshire affords any means of setoff as between judgment creditors in independent actions where, as here, such an entitlement has not been pleaded in either suit.

We need not definitively decide this point, however, for New Hampshire law surely does not *require* setoff in such straitened circumstances. While there is concededly some power on the chancery side to custom-tailor setoffs, *see, e.g., Arcadia Knitting Mills, Inc. v. Elliott Mfg. Co.*, 89 N.H. 188, 195 A. 681, 682 (1937), the exercise of that power rests in the trial court's broad discretion. *In re Public Serv. Co. (Public Serv. Co. v. New Hampshire Elec. Coop., Inc.)*, 884 F.2d 11, 16 (1st Cir.1989). Here, the judge calibrated the equitable scales and declined to fashion so innovative a remedy. Given the interests of others in the first judgment, and Trastco's long delay in asserting its rights, we do not think that the equities were so preponderant "as to suggest that we interfere with a decision made on the front lines by the judicial officer most closely familiar with" the cases. *See id.* at 16–17.

### Award of Attorneys' Fees

■ Trastco assails the lower court's award of attorneys' fees in Suit No. 1 as unanchored in any respectable legal theory. We find appellant's supporting arguments hard to follow and impossible to adopt.

Interpole's third-party complaint sought noncontractual indemnity premised on Interpole's putative liability to GCT for conduct engaged in by appellant. This type of noncontractual indemnity, structured along a passive/active culpability continuum, is no exotic weave. *See, e.g., Maritime Overseas Corp. v. Northeast Petroleum Indus.*, 706 F.2d 349, 351 (1st Cir.1983); *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Auth.*, 693 F.2d 1, 3 (1st

Cir.1982). In such circumstances, the indemnitee's damages may include reasonable counsel fees and costs necessarily expended in defending against the principal claim. *See Flunker v. United States*, 528 F.2d 239, 246 (9th Cir.1975); *Lusich v. Bloomfield S.S. Co.*, 355 F.2d 770, 776 (5th Cir.1966); *Morse v. Ford*, 118 N.H. 280, 385 A.2d 229, 229–30 (1978) (per curiam).

To avoid the sweep of this black letter law, Trastco maintains that attorneys' fees cannot be recovered because the bill of lading contained no provision for such an element of damages. But, this confuses the nature of Interpole's claim, which sounds in noncontractual indemnity rather than in breach of contract. The difference is of decretory significance. While COGSA governs claims brought on or under the bill of lading, it does not necessarily control an action for noncontractual indemnity. *Cf. Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 732–35 (5th Cir.1983) (indemnification action between consignor and shipper not subject to COGSA limitations period). Because GCT's primary complaint against Interpole must be determined under New Hampshire law, we believe that Interpole's attempt to get noncontractual indemnity with respect thereto must also be determined under New Hampshire law, not in terms of COGSA. *See Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 235 (5th Cir.1985) (body of law which establishes indemnitee's primary liability governs its claim for noncontractual indemnity against third party); *White v. Johns–Manville Corp.*, 662 F.2d 243, 247 (4th Cir.1981) (same); *cf. Drake v. Raymark Indus.*, 772 F.2d 1007, 1014 (1st Cir.1985) (whether third-party plaintiff had cognizable action against third-party defendant depended on whether plaintiff had cognizable action against third-party defendant), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986).

Trastco's second contention is equally unavailing. Admitting that, apart from COGSA, "an indemnitee may recover from his indemnitor attorneys' fees and expenses incurred in defending a claim as to which he is indemnified," appellant asserts that Interpole's claim is nevertheless

barred because an indemnitee "may not recover fees and expenses incurred to establish his right against the indemnitor." Appellant's Brief at 28 (emphasis deleted). Trastco's premise is impeccable but its conclusion is flawed.

The nisi prius roll leaves no doubt but that the district court, conversant with the legal principles on which Trastco now relies, limited the award to fees and expenses of the former genre. According to the judge, the fees assessed "amount[ed] to 'three-quarters of the total attorneys' fees and costs *incurred in defending General Contracting claims.*'" June 27, 1989 Order (emphasis supplied). The record, especially the affidavit of attorney Thomas B. Cronmiller submitted in support of the petition for default damages, fully corroborates this determination. Since the amount awarded for counsel fees and costs on the third-party complaint was restricted to services rendered in establishing the indemnitee's noncontractual right of recovery against its indemnitor, the award was proper.[3]

### *In Personam Jurisdiction*

 Trastco's appeal hangs by two further strings, braided together to comprise its final thread of assigned error. Appellant says that the court below wrongfully neglected to convene an evidentiary hearing on the issue of jurisdiction and that, with or without added evidence being taken, the court never acquired jurisdiction over Trastco.

We succinctly summarize the pertinent circumstances. When appellant belatedly roused itself and addressed Suit No. 1, it filed a motion to dismiss on jurisdictional grounds. *See supra* p. 111, entry # 6. That motion was unaffected by the existing default: it is settled beyond peradventure

that a void judgment, such as one entered by a court which lacks personal jurisdiction over the defendant, is a nullity and may be attacked at any time. *See, e.g., Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257, 260 (10th Cir.1971); *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807, 808 (7th Cir.1969). A fortiori, appellant had a right to raise the jurisdictional question after a default was entered but prior to judgment.

Interpole seasonably objected to the motion, asserting that the district court had both "general" and "specific" jurisdiction over Trastco's corporate persona. *See generally Donatelli v. National Hockey League,* 893 F.2d 459, 462–63 (1st Cir.1990) (describing distinction). Whereas Trastco had filed a detailed affidavit of its vice-president, Hamilton, limning its want of contacts with the forum, Interpole relied exclusively on its counsel's memorandum. Treating the memorandum on a par with the Hamilton affidavit and taking the parties' conflicting factual accounts "in a light most favorable to the non-moving party [Interpole]," the district court determined that it had jurisdiction.

Trastco immediately filed a motion to reconsider, complaining about the court's "light most favorable" standard and its treatment of Interpole's allegations as gospel. Interpole objected to this motion and submitted the affidavit of its president, Theobald, to buttress its earlier unsupported representations of fact. The Theobald affidavit was made on "knowledge *and belief,*" Record Appendix at 74 (emphasis supplied), and did not show affirmatively that he was competent to testify on certain crucial points contained therein.[4] The district court promptly denied reconsideration in a handwritten footnote order to-

---

**3.** *Appellant has not challenged the calculation of the amounts involved. We deem the point conceded.*

**4.** For example, Theobald, without reference to *the sources of his information,* stated:

> That Transamerican's vessels have called on port(s) in the State of New Hampshire.
>
> That Transamerican's vessels have, on many occasions, received cargo at the State

Pier, in Portsmouth, New Hampshire. Transamerican's vessels have docked at the State Pier, for purposes of loading scrap metal.

> That, in consideration of docking at the State Pier, Transamerican's vessels have paid fees to the State Port Authority.

Theobald Affidavit at 3–4 (paragraph numbers omitted).

talling two words, bereft of findings or discussion.

We think that the district court's methodology was faulty. Initially, Trastco requested a "hearing" on its motion to dismiss, Record Appendix at 40, which we take to mean an evidentiary hearing. Any ambiguity in the reference was settled before the district court actually entered the default judgment, when Trastco objected and unequivocally requested "a full evidentiary hearing." *Id.* at 148.[5]

We recognize that "in certain settings a matter can adequately be 'heard' on the papers." *Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 894 (1st Cir.1988) *(Aoude I); Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 411 (1st Cir.1985); *cf.* Fed.R.Civ.P. 43(e) (where practicable, court may decide factual issues not appearing of record based on affidavits). The proponent of an evidentiary hearing must, of course, ask for one in a timely fashion, *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1120 (1st Cir.1989) *(Aoude II),* and must thereafter convince the court of its desirability. *See, e.g., United States v. Cannons Engineering Corp.,* 899 F.2d 79, 94 (1st Cir.1990); *United States v. DeCologero,* 821 F.2d 39, 44 (1st Cir.1987). At that point:

> The test should be substantive: given the nature and circumstances of the case, did the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions?

*Aoude I,* 862 F.2d at 894. *Accord Commodities Export Co. v. U.S. Customs Service,* 888 F.2d 431, 436–37 (6th Cir.1989) (standard for whether some type of hearing is required on Rule 12(b)(1) motion is whether or not genuine issues of material fact exist); *see also Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 n. 1

(5th Cir.) (discussing when action may be dismissed without a hearing), *cert. dism'd,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982).

In this case, we think that appellant merited greater consideration. In the face of a preserved jurisdictional defense, a timeous, twice-repeated hearing request, and a conflicted set of facts, we think the court below erred in refusing to take evidence. Moreover, the court seemingly applied the wrong ("light most favorable") standard: while on a motion to dismiss all well-pleaded facts are taken in the light most congenial to the objector, *see, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969) (plurality op.); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989), that is only the first step. Having survived the preliminary round, the merits of the jurisdictional question must be measured by a different yardstick. At that stage, "the burden of proving jurisdiction rests with the party asserting the affirmative of the proposition." *Donatelli,* 893 F.2d at 468; *accord Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904 (1st Cir. 1980). Thus, the court also erred in never placing the devoir of persuasion on Interpole. And, we cannot say the errors were harmless. Many of the facts upon which Interpole (and ultimately the district court) relied were disputed; others were never properly verified. *Cf.* Fed.R.Civ.P. 56(e) (requiring affidavits used in summary judgment proceedings to "be made on personal knowledge," setting forth "facts ... admissible in evidence," and "show[ing] affirmatively that the affiant is competent to testify to the matters stated therein"). Consequently, the information in the file anent jurisdiction, taken as a whole, is exiguous and rife with contradictions.[6] It is impossi-

---

**5.** Although that hearing request was not limited to the jurisdictional question, one of the several reasons propounded in support of the need for such a hearing was "Transamerican's contention that it is not subject to personal jurisdiction in the State of New Hampshire." Record Appendix at 147.

**6.** To cite but one of several available examples, Theobald opined that Trastco's ships made frequent use of New Hampshire facilities, *see supra* note 4, and the district court relied on this averment, finding that Trastco "ports its vessels within the (admittedly short) seacoast of the state." Yet in its motion for reconsideration (which, like Theobald's affidavit, was "upon information and belief") appellant stated unequiv-

ble, on this chiaroscuro record, to state with any assurance whether or not the court had jurisdiction over Trastco. *See, e.g., Commodities Export Co.*, 888 F.2d at 436 ("a motion citing a jurisdictional defect under Fed.R.Civ.P. 12(b)(1) ... requires a preliminary hearing or hearing at trial to determme any disputed facts"); *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir.1983) (similar).

In sum, we do not believe that appellant had a sufficient opportunity to counter the jurisdictional "facts" posited by Interpole or to present the complete picture to the district court. Nor does it appear that the correct standard of proof was utilized. Given, especially, the fundamental relationship of the jurisdictional inquiry to the judicial task and the conflicted versions of the relevant facts, it was an abuse of discretion not to grant appellant's request for an evidentiary hearing or at least to establish some sort of alternate factfinding procedure.

We turn next to the question of remedy. We believe that the fairest and most practical course is to affirm the judgment below on the express understanding that the subject of personal jurisdiction remains open. On remand, appellant may, within such period as the district court fixes, file a motion to annul the judgment against it for want of in personam jurisdiction. *See* Fed. R.Civ.P. 60(b)(4);[7] 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2862 at 197–200 (1973) (Rule 60(b)(4) authorizes relief from judgments which are void for, *inter alia*, lack of jurisdiction). The district court should then allow a brief period of discovery devoted exclusively to the jurisdictional issue and hold a hearing to determine the matter. If the court finds that jurisdiction over Trastco was not properly invoked, it must then grant the motion, vacate the appropriate portion of the judgment in Suit No. 1, and dismiss the third-party complaint. Otherwise, the motion should be denied.[8]

### Conclusion

Having completed the reticulation, we need go no further. Finding, as we do, that appellant's first three assignments of error are unavailing, the default judgment against it may stand. The matter of jurisdiction, however, received too short shrift and should be aired more fully under the aegis of Rule 60(b)(4). The judgment is therefore affirmed and the cause remanded for further proceedings consonant herewith. All parties shall bear their own costs.

*So Ordered.*

---

ocally that it "never utilized the ports of New Hampshire for its vessels." Record Appendix at 61. The factual conflict, and others like it, were *never resolved below.*

7. The rule provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party ... from a final

judgment ... [if] ... (4) the judgment is void. . . .

8. We intimate no view as to the presence or absence of in personam jurisdiction or as to the effect, if any, of Trastco's commencement of Suit No. 2 on the jurisdictional calculus.