NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0371n.06

No. 19-6290

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>
C.H., A Minor, By and Through his Next Friend,<br>
Natural Guardian, and Parent, Amanda Shields,<br><br>
    Plaintiff-Appellant,<br><br>
v.<br><br>
UNITED STATES OF AMERICA,<br><br>
    Defendant-Appellee.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>

**FILED**<br>
Jun 23, 2020<br>
DEBORAH S. HUNT, Clerk<br><br>

ON APPEAL FROM THE<br>
UNITED STATES DISTRICT<br>
COURT FOR THE WESTERN<br>
DISTRICT OF KENTUCKY
</td>
</tr>
</table>

Before: BATCHELDER, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Amanda Shields brought this suit on behalf of her minor son, C.H., naming the United States as the defendant. Suing under the Federal Tort Claims Act (FTCA), Shields alleged that a physician and two certified nurse midwives negligently treated C.H. before, during, and after his birth—treatment that resulted in C.H.'s suffering various developmental and cognitive harms. The government moved to dismiss Shields's complaint for lack of jurisdiction, arguing that the United States had not waived its sovereign immunity as to the three medical professionals because they were not federal employees under the FTCA. Shields moved for discovery on that jurisdictional question. The district court denied Shields's motion and granted the government's. On appeal, Shields challenges the district court's dismissal only on the ground that she should first have been permitted to conduct jurisdictional discovery. We AFFIRM.

I.

Shields's suit stems from her labor and emergency delivery of C.H. at Fairview Community Health Center in April 2016. While at Fairview, Shields was treated by two certified nurse midwives, Heather Finney and Leigh Lindsey, and an obstetrician gynecologist, Dr. Devin Trevor. Shields alleges that these three medical professionals "failed to exercise the appropriate degree of care and skill expected" of such professionals and that their negligence caused C.H. "to suffer a hypoxic-ischemic brain injury" which resulted in "cerebral palsy, epilepsy, and developmental delay and cognitive impairment."

Shields sued the medical professionals under the FTCA, asserting that the United States was vicariously liable for Finney's, Lindsey's, and Trevor's negligence. She alleged that Fairview received federal funds to provide medical services to underserved populations under 42 U.S.C. § 254b and that the FTCA deems such recipients and their employees "Public Health Service employees" under 42 U.S.C. § 233(g). Once so deemed, suit under the FTCA provides the "exclusive" remedy for civil harms caused by such employees acting within the scope of their employment. *See* 42 U.S.C. § 233(a), (g)(1)(A). Finally, per Shields's assertion, Finney, Lindsey, and Trevor were employees of Fairview and were acting within the scope of their employment when they treated Shields and C.H.

The government did not quarrel with most of Shields's reasoning. For example, the government did not (and does not) dispute that under § 233(g) Fairview is deemed a Public Health Service employee, nor did it deny that a medical malpractice suit against a Fairview employee may be brought only under the FTCA. But the government disagreed that Finney, Lindsey, and Trevor were employees of Fairview. Instead, the government provided evidence—a physician service contract and billing invoices—that the three medical professionals were actually employed by

Woman's Health Specialists (WHS), a corporation which in turn contracted with Fairview to provide prenatal and delivery services. Thus, in the government's view, the medical professionals were, at most, contractors with the United States who were not covered by the FTCA. The government therefore moved to dismiss Shields's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

In response, Shields argued that the government's motion was premature because she had not been permitted discovery on the jurisdictional question. Accordingly, she moved for leave to serve an initial discovery request. In response, the government submitted an affidavit from the CEO of Fairview that explained that Finney, Lindsey, and Trevor were not employees of Fairview, that WHS does not bill Fairview for their delivery services, and that Fairview did not control the day-to-day care rendered by WHS.

The district court denied Shields's motion, concluding that she had not carried her burden to demonstrate that discovery would likely produce the facts necessary to withstand the government's motion. *C.H. ex rel. Shields v. United States*, No. 1:19-CV-00017-GNS, 2019 WL 5225464, at **4–5 (W.D. Ky. Oct. 16, 2019). The district court also determined, based on the limited record before it, that Finney, Lindsey, and Trevor were not employees of Fairview and granted the government's motion to dismiss. *Id.* at **1–4.

Shields timely appealed. On appeal, Shields does not challenge the district court's "employee" determination on the record as it now stands; instead, she argues only that the district court erred by granting the motion to dismiss without jurisdictional discovery.

II.

The United States can be sued for money damages only "to the extent that it has waived its sovereign immunity." *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). Put another

way, where the United States has not waived its sovereign immunity, federal courts lack jurisdiction to entertain claims against the United States. *Kohl v. United States*, 699 F.3d 935, 939–40 (6th Cir. 2012) (noting that if a claim against the United States does not fall within a sovereign immunity waiver, "federal courts lack subject-matter jurisdiction, and the claim must be dismissed"). The FTCA "provides a limited sovereign immunity waiver and subject matter jurisdiction for plaintiffs to pursue state law tort claims against the United States." *Milligan*, 670 F.3d at 692 (citing 28 U.S.C. § 1346(b)(1)).

Under the FTCA, the federal government is "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). As previously mentioned, recipients of § 254b funds—like Fairview—and their employees are deemed federal employees for purposes of the FTCA. *See* 42 U.S.C. § 233(g).

The government argued that the three medical professionals Shields accuses of negligence were not deemed employees under § 233(g) and thus moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Rule 12(b)(1) motions come in two varieties. They either "attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true" or they "attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *abrogated on other grounds by San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323 (2005). All agreed below that the government's is a "factual attack" because it contests the complaint's conclusory allegation that the medical professionals are employees of Fairview. *C.H. ex rel. Shields*, 2019 WL 5225464, at *2.

Shields does not challenge the district court's jurisdictional decision on the record it had before it. Rather, she argues that the record was incomplete because the district court was required to grant her jurisdictional discovery before it dismissed her complaint. "We review for abuse of discretion a claim that a case was dismissed prematurely because jurisdictional discovery should have been afforded." *A.O. Smith Corp.* v. *United States*, 774 F.3d 359, 369 (6th Cir. 2014); *see also KNC Investments, LLC v. Lane's End Stallions, Inc.*, 579 F. App'x 381, 385 (6th Cir. 2014) ("In *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981), this Court held that whether or not to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court.") "'An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment.' Therefore, this Court may only reverse the district court's conclusion as to Defendants' motion if it finds that the ruling was arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)).

Although it is true that plaintiffs "must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction" when "a defendant challenges a court's actual subject matter jurisdiction," plaintiffs must do more than "merely assert" the need for discovery; they must "explain what evidence relevant to subject matter jurisdiction they [would be] denied from obtaining." *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir.), *on reh'g in part*, 413 F.3d 578 (6th Cir. 2005). A plaintiff is not entitled to discovery if she cannot, at a minimum, "offer any factual basis for [her] allegations" and give the district court "a reasonable basis to expect that . . . discovery would reveal" evidence that supports the claimed jurisdiction. *See Chrysler Corp.*, 643 F.2d at 1240; *see also A.O. Smith Corp.*, 774 F.3d at 369–70 (holding that district court

did not abuse its discretion in denying jurisdictional discovery in FTCA case where plaintiffs could only "speculate" that government documents "might" contain information relevant to jurisdiction); *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (stating that a plaintiff seeking jurisdictional discovery is only "entitled to [that] discovery if the record shows that the requested discovery is . . . likely to produce the facts needed to withstand a Rule 12(b)(1) motion" (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009))); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093–94 (D.C. Cir. 2008) ("Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation.").

The question before us then, is whether the district court abused its discretion when it concluded that Shields had failed to show that "the requested discovery [was] likely to produce facts necessary to withstand the United States'[] motion." *C.H. ex rel. Shields*, 2019 WL 5225464, at *4. We conclude that it did not.

In the district court, both parties agreed that the jurisdictional question—whether the medical professionals were deemed Public Health Service employees under § 233(g) because of their relationship with Fairview—was governed by the "control test" set forth in *Logue v. United States*, 412 U.S. 521 (1973), and *Orleans*, 425 U.S. at 807. Under that test, the "critical factor" in distinguishing a federal employee, which the FTCA covers, from an independent contractor, which the FTCA does not, is "the authority of the principal to control the detailed physical performance of the contractor," *Logue*, 412 U.S. at 527–28, that is, "whether [the contractor's] day-to-day operations are supervised by the Federal Government," *Orleans*, 425 U.S. at 815. On appeal, Shields stands by this framing of the legal test. The government does not, arguing now that the "control test" should not apply to § 233 cases. We decline to address the government's new argument, which is contrary to the one it presented to the district court. Instead, we review the

district court's discovery determination in light of the "control test," but we express no position on the applicability of the "control test" to § 233 cases going forward.

In its motion to dismiss, the government argued that Finney, Lindsey, and Trevor were not deemed employees under § 233(g) and thus did not come within the FTCA's waiver of sovereign immunity. To demonstrate that Fairview did not have control or supervision over WHS or the medical professionals' day-to-day operations, the government appended to its motion a physician service contract between WHS and Fairview, along with billing invoices. The contract made WHS the "exclusive" and "sole provider of prenatal and delivery services to Fairview patients." It established that Fairview would pay a flat fee for prenatal visits but that WHS would directly bill the Kentucky Medicaid Program or other third-party payors for its delivery services. Finally, the contract explained that Fairview and WHS were responsible to obtain their own liability insurance. The billing invoices showed that Fairview payed WHS—and not Finney, Lindsey, and Trevor directly—for the prenatal services the medical professionals provided.

In response to this motion, Shields sought leave to file an initial discovery request to "discover any other documents and information which may relate to the relationship between the United States, WHS[,] and [Fairview]." She requested the production of two kinds of evidence: (1) "all contracts, memoranda, or other written agreements" between Fairview and WHS and the three medical professionals "related to the provision of prenatal and labor and delivery care to patients" at Fairview and (2) all correspondence between the same parties. She also made a request for admissions that covered, as relevant here, five topics: (1) whether the medical professionals were employees of Fairview or the United States; (2) whether Fairview or the United States billed Shields for the delivery services provided her; (3) whether Fairview or the United States controlled or supervised the delivery services the medical professionals provided

Shields; (4) whether Fairview or the United States paid the medical professionals for the delivery services they provided to Shields; and (5) whether Fairview or the United States provided the medical professionals with any employee benefits, such as health insurance, worker's compensation, etc.

The government attached a sworn affidavit to its reply that, in combination with the contract and invoices, addressed virtually all of these requests. "In applying *Logue* and *Orleans* to any contract to perform services on behalf of the United States, the contract and its terms in fixing the relationship of the offending party are critical." *Wood v. Standard Prods. Co.*, 671 F.2d 825, 829 (4th Cir. 1982). The contract that Shields requested is in the record and by its own terms, it is the exclusive contract for prenatal and delivery services provided to Fairview patients. It also makes clear that WHS and not Fairview would have billed Shields for the delivery care provided her. The affidavit—from Chris Keyser, the CEO of Fairview—buttresses the conclusions drawn from the contract. The Keyser affidavit explained that none of the medical professionals was an employee of Fairview and that "[a]ll obstetrical and gynecological care decisions are made by" WHS and its employees free from Fairview's control or oversight. It also reaffirmed that WHS, and not Fairview, bills patients for delivery services, and that the contract in the record was the only agreement between the two entities.

The district court went over all this evidence in its decision and concluded that it supported a finding that Finney, Lindsey, and Trevor were employees of WHS, not Fairview, and that "there [was] no reasonable likelihood that discovery would yield information to change that fact." *C.H. ex rel. Shields*, 2019 WL 5225464, at *5. We see no abuse of discretion there.

Shields argues for something like a per se right to jurisdictional discovery or perhaps to a preliminary hearing. Although she did not request a hearing in the district court, on appeal she

points to our opinion in *Commodities Export Co. v. United States Customs Service*, 888 F.2d 431 (6th Cir. 1989), which set out a "clear rule" that "requires a preliminary hearing or hearing at trial to determine any disputed facts upon which the [Rule 12(b)(1)] motion or the opposition to it is predicated." *Id.* at 436. But, in that same paragraph, we explained that there is no bright-line rule entitling plaintiffs to a hearing; a district court need not hold a hearing "where the facts are relatively simple[] [and] substantially uncontroverted." *Id.* at 436–37 (second alteration in original). That appears to be this case.

Shields failed to offer any "factual basis" or reason to believe discovery would be fruitful. *See Chrysler Corp.*, 643 F.2d at 1240. Neither the complaint's bare allegation that Finney, Lindsey, and Trevor are Fairview employees nor Shields's assertion that the documents and information she seeks to discover "may relate" to their employee status demonstrates the need for discovery. Such "[b]are allegations [and] vague assertions of the need for discovery are not enough." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Shields did not provide the district court with a "reasonable basis to expect that . . . discovery would reveal" that Fairview exerted control or supervision over the medical professionals' day-to-day care decisions, thus making them "employees" under the "control test." *See Chrysler Corp.*, 643 F.2d at 1240.

After reviewing the record and the district court's reasoning, we are not left with the definite and firm conviction that the district court committed a clear error of judgment. *See E.M.A. Nationwide*, 767 F.3d at 623. Accordingly, we will not disturb the district court's decision.

* * *

For the reasons stated, we AFFRIM the district court's dismissal of Shields's complaint for lack of jurisdiction.