Thomas J. McTIGHE,
Plaintiff-Appellant,

v.

MECHANICS EDUCATIONAL SOCIETY
OF AMERICA, LOCAL 19, AFL–CIO;
the National Acme Company; Acme-
Cleveland Corporation; Ivan L. Mel-
nak; Louis A. Bohn; Ron Godinsky;
Robert T. Koches; Robert LaRicca; Ida
Maltese, Employment Manager; Ed-
ward Parulis, Kenneth Stevens; Mi-
chael Willingham; "John Doe"; and
"Richard Roe", Defendants-Appellees.

No. 84–3854.

United States Court of Appeals,
Sixth Circuit.

Argued July 11, 1985.

Decided Sept. 4, 1985.

Theodore M. Mann, argued, Theodore M. Mann & Associates, Cleveland, Ohio, for plaintiff-appellant.

Thurlow Smoot, argued, Bruce G. Heary, Speith, Bell, McCurdy & Newell Co., L.P.A., Dianne Hearey, argued, Cleveland, Ohio, for defendants-appellees.

Before MARTIN and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Appellant Thomas J. McTighe appeals from the order of the district court granting summary judgment for appellees in this action alleging breach of a collective bargaining agreement and age discrimination. For the reasons set forth below, we affirm.

McTighe was hired by the National Acme Company ("Company") as a machine tool operator in the Cleveland, Ohio plant in August 1966. He became a member of Mechanics Educational Society of America, Local 19, AFL–CIO, with the terms and conditions of his employment set forth in a collective bargaining agreement. After working for twelve years as a machine tool operator, McTighe accepted a promotion to a supervisory position with the Company. He worked in this position, which was not covered by the collective bargaining agreement, for four years until March 5, 1982, when the Company terminated his employment. This termination apparently was the result of a general reduction in the number of employees due to economic conditions. At the time of his termination, the Union did not advise or represent McTighe in any manner. McTighe received four months' severance pay.[1] He promptly obtained employment as a machinist with another company but was laid off after approximately six months, in September 1982.

In late October 1982, McTighe met with Michael Willingham, president of the Union, to explore the possibility that he could return to his former job as a machine tool operator with the Company. He also contacted the Company on or near the same date, requesting that he be allowed to return to the collective bargaining unit as a machine tool operator. Although the facts are somewhat in dispute, apparently some agreement was reached with the Company whereby the Company agreed that McTighe could rejoin the collective bargaining unit, provided that he returned the severance pay and obtained Union approval of his re-employment. The Union, however, objected to McTighe's return to the collective bargaining unit and he was not re-hired by the Company.

On March 30, 1983, McTighe filed the instant lawsuit against the Company,[2] the Union, and various agents and officers of each. McTighe alleged breach of the collective bargaining agreement by the Company and breach by the Union of its duty of fair representation. He contended that he was protected by certain terms and conditions of the collective bargaining agreement because of his prior seniority of twelve years as a member of the collective bargaining unit. He further alleged a civil conspiracy to deprive him of his job and post-severance rights. Finally, he alleged age discrimination, claiming that his discharge was motivated by the Company's scheme to financially benefit by reducing its vested pension fund obligations by discharging older employees. He sought equitable relief, money damages and punitive damages. Jurisdiction was based upon § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On May 24, 1983, the Union and Union-related co-defendants moved for summary

---

**1.** At the time of his termination, McTighe had an exit conference with Ida Maltese, the Company's employment manager. At his conference, McTighe agreed to accept the severance pay.

**2.** The National Acme Company is a division of Acme-Cleveland Corporation; both were named as defendants.

judgment. This motion was granted on May 23, 1984, the district court finding that at the time of McTighe's discharge, the Union had no duty to represent him or seek his return to the collective bargaining unit. Similarly, a motion for summary judgment filed by the Company[3] was granted on September 14, 1984, on the grounds that because McTighe was a supervisor not covered by the collective bargaining agreement at the time of his discharge, he possessed no rights under the agreement. The district court further held that the age discrimination claim was barred by the statute of limitations.

## I.

The undisputed facts establish that McTighe was a supervisor and therefore was not a member of the collective bargaining unit when his employment was terminated on March 5, 1982. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 279–82, 94 S.Ct. 1757, 1764–66, 40 L.Ed.2d 134, 145–47 (1974). McTighe asserts that the Union had an established past practice of allowing foremen, upon loss of that position, to return to the bargaining unit based on seniority. He claims that this past practice was an integral part of the labor contract between the Union and the Company and the failure of the Union to allow him to return to the unit raises a duty of fair representation question. McTighe also relies upon the following language in the collective bargaining agreement:

Section 8—Transfer Out of the Unit. A. Supervisors—Servicers—Demonstrators:

When an employee covered by this Agreement has been or is in the future elevated to a salaried supervisory position or the salaried position of Servicer-Demonstrator which classifications are excluded from this Agreement, his/her seniority shall be frozen as of the time of such elevation, and the Company's personnel records will be marked according-

ly, and should the employee be returned to a position which is covered by this Agreement, he/she shall pick up the seniority he/she had at the time it was frozen. This is to be retroactive with respect to all present salaried supervisory and Servicer-Demonstrator employees.

McTighe argues that this language also supports his contention that the Union owed him a duty of fair representation. The district court disagreed:

This provision merely provides that should the Company elect to return plaintiff, or someone in similar circumstances, to his original job, he would maintain the seniority he had acquired prior to his promotion. Words in a collective bargaining agreement should be given their ordinary and reasonable meaning. *Penn Packing Co. v. Amalgamated Meat Cutters, Local 195*, 497 F.2d 888 (3d Cir. 1974).

The district court further concluded that because McTighe was a supervisor at the time of his termination, to impose upon the Union a duty of fair representation would cause a conflict with its duty to represent the workers whom McTighe had been responsible for supervising. The court quoted from *Cooper v. General Motors Corp.*, 651 F.2d 249, 250 (5th Cir.1981): "Supervisors are by the very nature of their positions not members of the collective bargaining unit and cannot be represented by a union that represents rank and file employees.... Therefore, the unions owe them no duty."

Similarly, the district court found that because McTighe, as a supervisor, could not be the beneficiary of a collective bargaining agreement, any past practice of the Company was not a relevant consideration. If the Company had returned supervisory personnel to positions within the unit, the court continued, it was done as an exercise of discretion and not as a mandatory requirement of the agreement.

---

**3.** Actually, the Company filed a motion for summary judgment and defendant Maltese filed a motion to dismiss. The court considered both

of these motions together in granting summary judgment to both the Company and Maltese.

We agree with the conclusion reached by the district court. McTighe, as a supervisor, was not a member of the collective bargaining unit and consequently the Union owed him no duty of fair representation at the time of his termination. It follows that the Union owed McTighe no duty several months later, when he sought to be reemployed. We conclude that the district court properly held that because McTighe was not covered by the collective bargaining agreement, the Union owed him no duty of fair representation. Similarly, the Company had no duty to comply with the terms of the agreement in its dealings with McTighe because he was not a member of the collective bargaining unit.

We find support for our holding in the recent Ninth Circuit case of *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819 (9th Cir.1985). In *Karo*, the plaintiff was a member of a musicians' union but was not an employee within a collective bargaining unit. The union had agreed to a contract modification which resulted in a change in audition procedures. The plaintiff filed a grievance with the union when another musician was hired without having to audition for a position which the plaintiff sought. When the union failed to act on his grievance, the plaintiff filed a hybrid action under § 301 of the Labor Management Relations Act, alleging breach of the duty of fair representation by the union and breach of the collective bargaining agreement by the Symphony. On appeal, the Ninth Circuit held: "Because the union owed no duty to Karo as a nonemployee of the bargaining unit, he lacks standing to sue for breach of such a duty." 762 F.2d at 821.

McTighe also contends that summary judgment was improper because discovery was incomplete. He argues that the motion for summary judgment filed by the Union on May 24, 1983, only two months after the lawsuit was initiated, somehow prevented him from pursuing discovery from the Union and Union-related defendants. Although the district court had ordered a five-month discovery deadline, McTighe made no attempts at discovery in regard to the Union defendants until after the court granted the motion for summary judgment in May 1984. McTighe made some attempt at discovery from the Company, but his efforts were rather limited. In view of McTighe's dilatory efforts at discovery, we conclude that his contention that summary judgment was premature is without merit.

## II.

Section 626 of the Age Discrimination in Employment Act of 1967, amended in 1978, 29 U.S.C. §§ 621–634, sets forth the procedure to be followed in the filing of an age discrimination claim. Section 626(d) provides in relevant part:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. Such a charge shall be filed—(1) within 180 days after the alleged unlawful practice occurred....

It is undisputed that McTighe failed to follow the procedural requirements of § 626(d). He was terminated on March 5, 1982 and instituted the instant lawsuit on March 30, 1983; he never filed a charge with the Equal Employment Opportunity Commission. McTighe argues, however, that the 180-day filing deadline was tolled because the conduct of the Company led him to believe he would be rehired and induced him to delay any action on his age discrimination claim.

The district court rejected McTighe's "equitable tolling" argument because the conduct upon which he relied to toll the 180-day limitation period did not occur prior to October 1982, well beyond 180 days after his March 5, 1982 termination. McTighe's age discrimination claim also must fail because he did not file the requisite charge with the Commission before instituting this lawsuit. Unlike the 180-day provision, the 60-day filing requirement is a jurisdictional prerequisite. *Wright v. Tennessee*, 628 F.2d 949, 953 (6th Cir.1980) (*en banc*). Thus, because McTighe com-

menced this action without first filing a charge with the Commission, the district court lacked jurisdiction over the age discrimination claim.

Accordingly, the order of the district court granting the motions for summary judgment is affirmed.