## SPRINKLER FITTERS LOCAL UNION NO. 692, et al.

v.

## FIRST INDEMNITY INSURANCE COMPANY, et al.

### Civ. A. No. 93–1465.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1993.

Joseph P. Boyle, Scott A. Cronin, Charles W. Gilligan, O'Donoghue & O'Donoghue, Philadelphia, PA, for plaintiffs.

John A. Greenhall, George E. Pallas, Cohen & Huntington, P.C., Philadelphia, PA, for defendants.

### *ORDER*

KATZ, District Judge.

**AND NOW**, this 30th day of December, 1993, upon consideration of Plaintiffs' Supple-

---

mental Motion for Summary Judgment and Defendants' response thereto, it is hereby **ORDERED** that Plaintiffs' Motion is **GRANTED.**

### DISCUSSION

#### I. Facts

This a contract enforcement action involving a series of labor contracts and a separate series of surety agreements. The facts are not in dispute. *See* First Set of Joint Stipulated Facts. Plaintiffs are Sprinkler Fitters Local Unions 692 and 696 ("Local 692 and Local 696") and the Trustees of the National Automatic Sprinkler Industry Pension, Welfare, Educational and Supplemental Pension Funds ("NASI Funds"). Local 692 and Local 696 are labor organizations as defined under the Labor–Management Relations Act ("LMRA"). 29 U.S.C. § 152(5). The NASI Funds are employee benefit trust funds as defined under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1002(3). Defendants are First Indemnity of America, Inc. and Homestead Insurance Company.

On behalf of laborers engaged in the installation and maintenance of fire protection systems ("Laborers"), Local 692 and Local 696 entered into a series of collective bargaining agreements ("CBAs") with Adelphia Automatic Sprinkler Company, Inc. ("Adelphia"). These CBAs obligated Adelphia, in exchange for services performed, to make hourly payment of wages directly to the Laborers and fringe benefit contributions to the NASI Funds on the Laborer's behalf. Separately and on a per-project basis, Adelphia entered into a series of uniform surety bonds with the Defendants. Under these bonds the Defendants agreed to guarantee a certain class of Adelphia's labor and material payment obligations.

Adelphia failed to make wage payments and fringe benefit contributions as required by the operative CBA on several projects covered by one of the CBAs and by one of the Defendants' surety bond (the "Bonded Projects"). In response, Plaintiffs sought payment from Defendants pursuant to the terms of the applicable bonds.[1] Defendants denied the request for payment and Plaintiffs initiated this action.

The parties have stipulated that Adelphia breached the operative CBAs for the Bonded Projects in question and that the total amount of wages and benefits due is $75,000. *See* Joint Stipulation ¶ 14.

#### II. Issues Presented

Defendants contest Plaintiffs claims on two legal grounds. First, they contend that this court lacks subject matter jurisdiction. Second, they assert that the Plaintiffs are not proper claimants under the terms of the bonds.

#### III. Jurisdiction

The parties are not diverse. Therefore, the issue is whether the Plaintiffs claims present a justiciable federal question. Plaintiffs assert jurisdiction under two comprehensive bodies of federal law, the LMRA and ERISA. *See* 29 U.S.C. § 185 and 29 U.S.C. § 1132. There is conflicting authority regarding the scope of federal jurisdiction under each statutory scheme.[2]

By Order of September 29, 1993, the court denied Defendants' Motion to Dismiss Plaintiffs' Claims for Lack of Subject Matter Jurisdiction and held that jurisdiction was proper under the LMRA. The court also concluded that ERISA could not provide a basis for jurisdiction as the Defendants are not "employers" as defined by ERISA. A review of the parties' contentions regarding jurisdiction and the court's previous order is appropriate.

**Jurisdiction Under Section 301 of the LMRA**

 Section 301(a) of the LMRA provides in relevant part:

*International Union, UMWA v. Covenant Coal,* 977 F.2d 895 (4th Cir.1992). For a similar discussion regarding ERISA jurisdiction see *Greenblatt v. Delta Plumbing & Heating Corp.,* 818 F.Supp. 623 (S.D.N.Y.1993).

---

1. Plaintiffs have obtained a timely assignment of the Laborers claims. *See* Order of December 14, 1993.

2. For a discussion of the split in the Circuits regarding the scope of LMRA jurisdiction see

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court ... without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Plaintiffs argue that jurisdiction is proper because this action is premised on Adelphia's breach of the CBAs. The Defendants contend that Section 301 jurisdiction is limited to claims against parties who are signatories to a contract between an employer and a labor organization and does not encompass suits against non-signatories who have agreed to guarantee obligations detailed in such agreements.

Section 301 jurisdiction and its corresponding preemption of state law is not dependent upon whether the parties to the suit are signatories to a contract between an employer and a labor organization. *See, e.g., Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (tort claim by employee against employer for bad faith denial of benefits detailed in collective bargaining agreement falls within ambit of federal contract law). Rather, the existence of Section 301 jurisdiction depends upon the nature of the subject matter in controversy. *See, e.g., Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–104, 82 S.Ct. 571, 576–577, 7 L.Ed.2d 593 (1962) (a suit for violation of a labor contract is to be resolved by reference to a common body of federal law); *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir.1976). This principle was recently explained by the Third Circuit in *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992):

Although [S]ection 301 refers only to suits between employers and unions, and does not explicitly mention suits between employers and employees, the Supreme Court has read this provision to create federal jurisdiction over all claims that are substantially dependent upon analysis of a collective bargaining agreement....

*Angst*, 969 F.2d at 1536 n. 5 (citing *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Griesmann v.*

*Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66 (3d Cir.1985)).

Here, in order for the Plaintiffs to prevail they must establish that: (1) one of CBAs was operative; (2) Adelphia violated the terms of that CBA; and, (3) the obligations in question were guaranteed by the Defendants for the projects in question. Therefore, resolution of this controversy necessarily involves interpreting and applying of a contract between an employer and a labor organization. In other words, the rights and obligations of the parties in this action are defined by the applicable CBA and jurisdiction is proper pursuant to Section 301 of the LMRA. *See, e.g., Allis–Chalmers*, 471 U.S. at 210–211, 105 S.Ct. at 1911 (the relationship created by a collective bargaining agreement "should be defined by application of an evolving federal common law grounded in national labor policy").

To support their position that federal labor law should not govern this controversy Defendants cite *Xaros v. U.S. Fidelity and Guar. Co.*, 820 F.2d 1176 (11th Cir.1987), where jurisdiction was found lacking under similar circumstances. In *Xaros*, the court held that "a Section 301 suit may be brought for violation of a labor contract only *against* those who are parties to the contract in issue." *Xaros*, 820 F.2d at 1181 (emphasis original) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), for the proposition that actions merely relating to a contract within the coverage of Section 301 do not come within the LMRA's jurisdictional scope).

The Third Circuit has not adopted *Xaros*'s per se rule. Instead, in analyzing the contours of Section 301 jurisdiction, the Third Circuit focuses on the subject matter in controversy rather than the formal relationship of the parties. *See, e.g., Angst*, 969 F.2d 1530; *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120*, 647 F.2d 372 (3d Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). For example, in *Wilkes–Barre*, the court found Section 301 jurisdiction in a tortious interference action against a non-signatory. The *Wilkes–Barre* court determined that res-

olution of the tortious interference claim required interpretation of a collective bargaining agreement, and reasoned:

> It is the need for national uniformity in determining the scope of obligation agreed to in labor contracts that determines whether a federal standard is applicable, and which determines, incidentally, that there is concurrent state and federal subject matter jurisdiction.

*Wilkes–Barre*, 647 F.2d at 380. Defendants' argument is not persuasive in this Circuit.

**Jurisdiction Under Section 515 of ERISA**

The court has previously ruled that ERISA does not provide a basis for jurisdiction in this action. *See* Order of September 29, 1993 p. 3 n. 4. Nevertheless, in their present motion Plaintiffs have renewed the assertion of jurisdiction under ERISA. Section 515 of ERISA provides jurisdiction over "employers" who are delinquent in funding an employee benefit plan. 29 U.S.C. § 1145. Section 3 of ERISA provides:

> (5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.

29 U.S.C. § 1002. It is undisputed that Adelphia is an employer as defined under ERISA. The Plaintiffs contend that Defendants should also be characterized as employers because they guaranteed Adelphia's obligations. This argument has been rejected by the Ninth and Eleventh Circuits. *See, e.g., Carpenters Southern Cal. Admin. Corp. v. D & L Camp Const.,* 738 F.2d 999 (9th Cir.1984); *Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.,* 827 F.2d 1454 (11th Cir.1987). *But see, Greenblatt v. Delta Plumbing and Heating,* 818 F.Supp. 623 (S.D.N.Y.1993) (under ERISA surety is itself an employer when surety guarantees an employer's obligation acts for the benefit of said employer).

**3.** The term "Contract" refers to the written agreement between Adelphia and the owner of

*IV. Enforcement of Surety Agreement*

Given that jurisdiction is proper, the only remaining issue is whether the Plaintiffs, individually and as assignees of the Laborers claims, are proper claimants under the terms of the surety bonds. The Plaintiffs are proper claimants.

The surety bonds uniformly define a claimant as:

> one having a direct contract with the Principal [Adelphia] ... for labor, material or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.[3]

Defendants argue that Local 692 and Local 696 are technically not proper claimants because the contracts the Plaintiffs are suing upon (the CBAs) are not "direct contracts" as required by the surety bonds. Specifically, Defendants contend that the CBAs are general "side-agreements" that govern the relationship between Adelphia and the Plaintiffs, and are not project specific agreements for the provision of "labor, material or both, used or reasonably required for use in the performance of the [project in question]".

The Defendants' argument is without merit. First, it is clear that a claim under a particular project's bond is proper if it (1) arises out of the provision of labor or materials for that project and (2) is predicated on a direct contract with Adelphia. It is undisputed that Plaintiffs claims are for labor provided to Adelphia for the bonded projects. Further, it is unreasonable to conclude that the CBAs are anything other than direct contracts detailing the rights and liabilities associated with the provision of such labor.

Second, viewed in the abstract, Defendants' argument is that no claim on a contract with Adelphia is proper under a particular project's bond unless the contract in question refers in detail and exclusively to the labor and material to be provided on that

the particular project in question.

particular project. In other words, Defendants' position is that their guarantees do not cover all "direct contracts". Rather, their guarantees cover only "project specific direct contracts". Such an interpretation is unreasonable.

### JUDGMENT

**AND NOW,** this 30th day of December, 1993, it is hereby **ORDERED** that judgment is entered in favor of the Plaintiffs and against the Defendants in the amount of $75,000.00.