William CASEY

v.

LIFESPAN CORPORATION; Rhode Island Hospital; Linda McDonald in her capacity as President of the United Nurses and Allied Professionals, Local 5098 f/k/a Federation of Nurses and Health Professionals, Local 5098, AFT, AFL—CIO; and Myra Cavallaro, in her capacity as Secretary of the United Nurses and Allied Professionals, Local 5098 f/k/a Federation of Nurses and Health Professional, Local 5098, AFT, AFL—CIO.

Civil Action No. 98–492ML.

United States District Court, D. Rhode Island.

July 6, 1999.

472

Gina A. Vigliotti, Providence, RI, for plaintiff.

Marc B. Gursky, Providence, RI, for defendant R.I. Federal of Teachers, et al.

Edwards & Angell by Walter C. Hunter, Providence, RI, for defendant Lifespan Corp., et al.

## MEMORANDUM AND ORDER

LISI, District Judge.

Plaintiff William Casey filed suit against Defendants, namely Lifespan Corporation and his former employer Rhode Island Hospital as well as the president and secretary of the United Nurses and Allied Professional, Local 5098. Invoking this court's jurisdiction pursuant to the Labor Management Relations Act, 29 U.S.C. § 185(c), Casey avers that Defendants violated their collective bargaining agreement. Defendants have moved to dismiss Casey's suit for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for summary judgment on the

merits pursuant to Fed.R.Civ.P. 56. Plaintiff opposed both motions.

The court referred the motion to Magistrate Judge Robert W. Lovegreen for his preliminary review, findings, and recommended disposition. *See* 28 U.S.C. § 636(b)(1); D.R.I.Loc.R. 32(c). The magistrate judge recommended that this court deny both motions. The matter is presently before the court on Defendants' objections to the magistrate judge's report.

Upon de novo review this court adopts the findings, conclusions and recommendations of Magistrate Judge Lovegreen. The defendants' motions are hereby *denied.*

SO ORDERED.

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Plaintiff, William Casey, has brought a claim for violation of a collective bargaining agreement ("CBA") and invokes this court's jurisdiction pursuant to the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185(c). Plaintiff requests injunctive relief, damages and attorney's fees. Defendants Linda McDonald and Myra Cavallaro, in their respective capacities as President and Secretary of the United Nurses and Allied Professionals, Local 5098 (hereinafter referred to as the "Union"), have moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). All defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has opposed both motions.

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c). A hearing was held on January 20, 1999. After examining the memoranda submitted, listening to the arguments of counsel, and conducting my own independent research, I recommend that defendants' motions to dismiss and for summary judgment be denied.

*Statement of the Facts*

Plaintiff has been employed by Rhode Island Hospital ("RIH") for eighteen years. For thirteen years plaintiff has held a first line supervisory position. His current position is Senior CT Technologist in the CT Scan Division which is within the Department of Diagnostic Imaging ("Department"). Although there are bargaining unit positions in the CT Scan Division, plaintiff's is not such a position because it involves supervisory responsibilities. Plaintiff works the 3:45 p.m. to 11:45 p.m. shift and wanted to work the day shift. In August 1998, a day shift position, Staff CT Technologist, was newly created and plaintiff applied for the position. Staff CT Technologist was a bargaining unit position. The only other applicant for the position was Diane Ouelette, a bargaining unit member in the CT Scan Division. The successful candidate was to begin in the new position on October 1, 1998.

Clare Warner, Lead Technologist CT Scan, reviewed the applications for the new position and, prior to awarding that position to plaintiff, discussed the provision in the CBA applicable to hiring, with Susan Foley, the Department's Union representative. Warner also discussed the provision with Robert Bellemore, Operations Manager of the Radiology Division and David Woodford, the Technical Director of the Department. All concurred that according to the terms of the CBA, plaintiff had more seniority than Ms. Ouelette and had seniority preference for the new position.

Ms. Ouelette brought a grievance pursuant to the CBA, contesting the award of the position to plaintiff. The Union represented Ms. Ouelette during the grievance process. In mid-September, Lifespan and RIH reversed the decision to award the position to plaintiff and, instead, hired Ms. Ouelette. Thereafter, plaintiff filed this suit.

*Defendant Union's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

*Federal Rule of Civil Procedure 12(b)(1) Standard*

In reviewing a Fed.R.Civ.P. 12(b)(1) motion, the inquiry of the Court is whether or not the challenged pleading sets forth allegations sufficient to demonstrate that the Court has subject matter jurisdiction in the case. In making this determination, the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court is not restricted, however, to examining only the pleadings but may review any evidence, including affidavits, to determine any disputed facts upon which the motion or the opposition to it is predicated. *See Commodities Export Co. v. United States Customs Service,* 888 F.2d 431 (6th Cir.1989); *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), *overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Should the pleader allege facts from which jurisdiction may be inferred, the motion must be denied. *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). If there are genuine issues of material fact at issue, a decision must be made on the factual questions before the motion is decided. *Commodities Export Co. v. United States Customs Service,* 888 F.2d at 436. However, if "the facts are relatively simple [and] substantially uncontroverted," the court may rule on a 12(b)(1) motion without pausing to make findings on disputed questions of fact. *Id.* at 436–37.

A federal court has limited jurisdiction, and jurisdictional limits, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equipment and Erection Co. v. Kro-*

*ger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

*Discussion*

Plaintiff asserts that subject matter jurisdiction over his claim is conferred on this court by § 301 of the LMRA, 29 U.S.C. § 185 which states in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations may be brought in any district court of the United States having jurisdiction over the parties ...

Although § 301 does not explicitly provide jurisdiction over suits brought by employees to enforce the terms of a CBA, defendant Union recognizes that the section has been interpreted by the Supreme Court to include such suits. *See Smith v. Evening News, Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Union argues, however, that *Smith* and its progeny stand for the proposition that only union members who are also members of the relevant bargaining unit may maintain a suit under § 301 to enforce the provisions of a CBA. In support, the Union cites a number of cases where courts allowed employee union members to maintain suits under § 301 and a number of cases where non-union and/or non-bargaining unit members were denied such opportunity. For the latter proposition, the Union relies heavily on *McTighe v. Mechanics Educational Society of America,* 772 F.2d 210 (6th Cir.1985), *Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819 (9th Cir.1985) and *Bowers v. Ulpiano Casal, Inc.,* 393 F.2d 421 (1st Cir.1968).

In *McTighe,* plaintiff brought suit against his former employer and his former union under § 301 claiming that the employer had violated the CBA and the union had violated its duty of fair representation. He alleged that, because he had been a member of the collective bargaining unit for twelve years prior to becoming a supervisor, a provision in the

CBA required that he be able to return to his former position in the collective bargaining unit when he was terminated as a supervisor. The company approved his return conditioned on approval of the union. The union objected. McTighe was not rehired and he sued.

The Sixth Circuit, in affirming summary judgment for defendants, explained that McTighe was a supervisor and "therefore was not a member of the collective bargaining unit when his employment was terminated." *McTighe*, 772 F.2d at 212. After examining the CBA provision upon which McTighe relied, the court concluded that the lower court "properly held that because McTighe was not covered by the collective bargaining agreement, the Union owed him no duty of fair representation" and "the Company had no duty to comply with the terms of the agreement with McTighe because he was not a member of the collective bargaining unit." *Id.* at 213. The court found support for its holding in *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819 (9th Cir.1985), which I will discuss below.

*McTighe*, standing alone, suggests that § 301 does not provide federal jurisdiction over claims for breach of a CBA by plaintiffs who are supervisors because they cannot be beneficiaries of CBAs. However, *McTighe* does not stand alone, and in a case decided by the Sixth Circuit six years later, the court refused to extend its holding in *McTighe*. *See Woosley v. Avco Corp.*, 944 F.2d 313 (6th Cir.1991). In *Woosley*, suit was brought under § 301 by plaintiffs who had at one time been bargaining unit members but had since become supervisors. The *Woosley* plaintiffs claimed that the Company had breached the CBA when plaintiffs had requested return to their bargaining unit positions and their requests were denied. The lower court held for the plaintiffs and ordered that they be reinstated. The Sixth Circuit affirmed that plaintiffs could sue under § 301 even though they were supervisors and remanded to the lower court to determine if the requirement that plaintiffs first exhaust their internal remedies would be futile.

In so holding, the court distinguished *McTighe* by focusing on the language of the CBA relied upon in each case. Unlike the CBA provision in *McTighe* which gave the company discretion in reinstating a supervisor to his former bargaining unit position, the court interpreted the relevant provision of the CBA in *Woosley* to mandate that a supervisor requesting return to a bargaining unit position immediately be reinstated. Therefore, the court reasoned, the supervisor plaintiffs who had made the requests should have become bargaining unit members at that time and should be treated as such when they brought suit so that they could assert their right to return to the Unit under § 301. The court found that the language of the CBA established "a legal right 'the invasion of which creates standing.'" *Id.* at 317 (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■■■ It is clear from the Sixth Circuit's discussion of *McTighe* and its holding in *Woosley* that a supervisor is not precluded, *per se*, from maintaining an action for breach of a CBA under § 301. Moreover, *Woosley* supports the proposition that in order to determine jurisdiction and/or standing under § 301, the court must examine the CBA provision upon which a particular plaintiff relies and cannot ignore the legal rights, if any, created by the provision, even if those rights are being asserted by supervisors.

*Karo*, upon which the Sixth Circuit relied in *McTighe* and upon which the Union now relies, is in keeping with both the holding of *Woosley* and with the concept that jurisdiction and standing turn on examination of the legal rights created by the CBA provision in question. Karo was a member of a musician's union and had been employed by the San Diego Symphony Orchestra ("Symphony") for one concert thirteen years prior to his suit against the union and the Symphony under § 301.

His claim alleged that the union had breached its duty of fair representation by agreeing to modification of a CBA which bypassed previously required audition procedures and by failing to present his grievance. He also alleged that the Symphony had breached the CBA by failing to hold auditions for the position he coveted.

The Ninth Circuit held that although Karo was a union member, he was not an employee of the Symphony, not a member of the bargaining unit, and, therefore, not owed a duty of representation by the union in negotiating or modifying the CBA. *Karo*, 762 F.2d at 821. The court then examined Karo's standing to bring suit against the Symphony under § 301. It held that, even if under the language of the original CBA, Karo might have been considered a third party beneficiary, because the provision appeared applicable to any musician seeking employment with the Symphony, Karo did not have standing under the modified CBA because the Symphony was no longer required to hold auditions for the vacancy. *Id.* at 822.

The court went on to distinguish cases where federal courts had allowed non-employee, non-union, non-bargaining unit members to maintain suits for breach of CBAs under § 301 as third party beneficiaries. In those cases, the CBAs had expressly granted rights to the plaintiffs which had already vested. Yet it was clear from the provision of the CBA that Karo had invoked that no right to audition had vested in Karo prior to the modification of the agreement which specifically gave the Symphony the right to fill the vacancy at issue with a musician with six years prior service to the Symphony, a qualification Karo lacked, without having him or her audition. *Id.* at 822–824. The court emphasized that " 'for an individual to bring an action under § 301 he must be seeking to enforce a right that is personal to him and vested in him at the time of the suit.' " *Id.* (quoting *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 657 (8th Cir.1966)), *cert. denied,* 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967).

It is clear that *Karo* does not stand for the legal proposition that the Union urges: that only a bargaining unit member may bring a claim under § 301. It is also clear that *Bowers,* the only First Circuit case cited by both defendant and plaintiff and the only one my own research uncovered, is inconsistent with that proposition as well.

In *Bowers,* trustees of a Welfare Fund ("Fund") brought a § 301 suit alleging that defendants had wrongfully diverted monies from the Fund. The Fund had been established pursuant to a provision of a CBA. The plaintiffs were trustees of the Fund but were not employees of the company nor members of the union that were parties to the CBA. The defendants were not trustees of the Fund nor employees of the company or members of the union. The defendants were individuals who allegedly had aided a few trustees of the Fund in the wrongful diversion of monies. Defendants moved to dismiss the claim for lack of subject matter jurisdiction. The lower court granted the motion. On appeal to the First Circuit, the court affirmed, explaining that the complaint did not and could not allege that defendants had breached a contract. Defendants were neither parties to the CBA nor to the Fund contract. Therefore, subject matter jurisdiction under § 301 was lacking.

The bulk of the court's attention in *Bowers* was focused on whether subject matter jurisdiction could be premised on a different section of the LMRA which specifically addressed the creation of Welfare Funds. Dicta in *Bowers* suggests that if the court had to decide whether § 301 jurisdiction was proper where the plaintiffs were trustees of the Fund, but were not employees of the company nor union members, they might not allow the suit. However, the court fully acknowledged the right of an employee to sue under § 301. The court did not restrict the meaning of employee to exclude supervisors or to include only

those who are members of bargaining units. *See Bowers,* 393 F.2d at 422–23.

Although certain sections of the LMRA do restrict the meaning of "employee" to exclude those with specified supervisory responsibilities from coverage under the Act, the use of the word "employee" in § 301 has been interpreted to include those with supervisory responsibility. *See Majewski v. B'Nai B'Rith International,* 721 F.2d 823 (D.C.Cir.1983) (collecting cases and offering a well-reasoned analysis of Congressional intent in enacting the various sections, concluding that the definition of "employee" in § 2(3), which excludes those with certain supervisory responsibilities, has nothing to do with § 301 federal jurisdiction and holding that supervisors suing for breach of a CBA between the supervisors' union and the employer could maintain an action under § 301).

Further support for the proposition that jurisdiction under 301 extends to those beyond the confines of the bargaining unit and turns on whether plaintiff has had legal rights vested in him pursuant to the CBA is found in *International Union of Bricklayers v. Menard & Co.,* 619 F.Supp. 1457 (D.R.I.1985), and *Hazen v. Western Union Telegraph Co.,* 518 F.2d 766 (6th Cir.1975).

In *International,* Judge Selya's opinion explicitly recognized that non-signatories to a CBA may bring suit under § 301. *See International Union of Bricklayers,* 619 F.Supp. at 1463 (citing *Schneider Moving and Storage Company v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984); *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). The court rejected defendants' argument that the plaintiff Employee Benefit Fund ("EBP") lacked standing because it was not the real party in interest. *Id.* at 1465. Where the EBPs claimed a breach of the CBA "which has redounded to their detriment" they had properly invoked jurisdiction under the LMRA. *Id.* at 1463.

In *Hazen,* a widow of an employee brought a § 301 claim against her husband's employer to enforce a severance pay provision in a CBA. The CBA expressly granted that benefit to designated third party beneficiaries. The Sixth Circuit held that she could maintain the claim under § 301 and, as a third party beneficiary, she was not required to exhaust internal grievance and arbitration procedures. *Hazen,* 518 F.2d at 767. The focus in *Hazen* was on the provision invoked by the plaintiff and whether that provision vested in her legal rights that she was attempting to enforce through her claim under § 301.

Other courts have phrased the jurisdictional inquiry in a way similar to the way the courts have decided whether § 301 preempts state law. In a claim brought by a trade association against a non-signatory to a CBA, the Ninth Circuit explained:

> Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or employer. All that is required for jurisdiction to be proper under § 301 is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract.

*Painting and Decorating Contractors Ass'n of Sacramento, Inc. v. Painters and Decorators Joint Committee of East Bay Counties,* Inc., 707 F.2d 1067, 1071 (9th Cir.1983) (collecting cases); *See Sprinkler Fitters Local Union No. 692, v. First Indemnity Ins. Co.,* 840 F.Supp. 38, 40 (E.D.Pa.1993).

In *Sprinkler Fitters,* the court fortified the connection between the jurisdictional inquiry and the preemption effect of § 301 and explained:

> Section 301 and its corresponding preemption of state law is not dependent upon whether the parties to the suit are signatories to a contract between an em-

ployer and a labor organization. Rather, the existence of Section 301 jurisdiction depends upon the nature of the subject matter in controversy.

*Sprinkler Fitters,* 840 F.Supp. at 40 (citations omitted)

■ Although the dicta in *Bowers* suggests that the formal relationship of the parties may be a part of the inquiry, in the instant case plaintiff satisfies the *Bowers* criterion because he is an employee, albeit a supervisory employee, who was initially awarded a bargaining unit position and then had it taken away. Plaintiff has invoked § 301 jurisdiction because his claim is that he, not Ms. Ouelette, should have been awarded the position and defendants' action violated Article 18 § 6(a) of the CBA which establishes the criteria for filling the bargaining unit vacancy for which plaintiff applied. Article 18 § 6(a) states in pertinent part:

> *Technical Bargaining Unit* —Applicants for the vacancy will be given preference by seniority in order of department, then seniority group, then Hospital-wide except for the department of Diagnostic Imaging, which shall be by seniority group, department, then Hospital-wide.... Outside applicants will not be offered employment if any qualified Hospital employee applies for and accepts a posted position. Between qualified applicants with equal experience, skills, abilities and disciplinary/performance counseling records, seniority will be determinative. Supervisors who bid for a posted vacancy will be credited with the experience accrued only through the first-line supervisory level.

Plaintiff argues that this section anticipates applications by supervisors and establishes how seniority is to be calculated when the hiring criteria for such jobs includes seniority. The job that plaintiff applied for included seniority as a criterion and, at the time of his application, plaintiff was a supervisor. Plaintiff's claim to the position turns on the court's interpretation

of Article 18 § 6(a) to determine whether and to what extent plaintiff's seniority over Ms. Ouelette should have been determinative.

Seniority status is a creature peculiar to collective bargaining agreements. It does not stem directly from the employer-employee relationship. *Wightman v. Springfield Terminal Railway Co.,* 100 F.3d 228, 232 (1st Cir.1996). Therefore, it seems particularly appropriate for federal common law, which has been developed specifically to govern the interpretation of CBAs and to lend uniformity to such interpretation, to govern here where the CBA purports to grant plaintiff certain seniority rights and his claim turns on the way and to what extent those rights were recognized. *See, Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (holding that § 301 is substantive and empowers federal courts to fashion federal common law to govern collective bargaining agreements under the federal labor laws); *see also International Brotherhood of Electrical Workers, AFL—CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (emphasizing the importance of uniformity in the interpretation of collective bargaining agreements).

Therefore, because plaintiff's claim is one that requires this court to construe the terms of a CBA that purports to vest seniority rights in supervisory personnel at the time they apply for jobs in the Diagnostic Imaging Department and plaintiff's claim is that those rights were violated, this court has subject matter jurisdiction over the claim under § 301 and defendant's motion to dismiss on that ground should be denied.

However, the question of plaintiff's standing remains and because it goes to the merits of his claim, it will be discussed below in conjunction with defendants' motion for summary judgment.

*Defendants' Motion for Summary Judgment*

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.*, 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)); *see Goldman*, 985 F.2d at 1116; *Lawrence*, 980 F.2d at 68; *Garside*, 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.)'" (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limits differing versions of the truth which a fact finder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman*, 985 F.2d at 1116 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

### Discussion

Defendants maintain that the language of the CBA is unambiguous and a plain reading of the relevant provision establishes that defendants did not violate any terms of the CBA when Ms. Ouelette was hired instead of plaintiff. In the alternative, defendants argue that even if the language is ambiguous, extrinsic evidence shows that defendants' interpretation is the only reasonable one. Plaintiff counters that the language of the provision is

**480**

ambiguous and in light of the extrinsic evidence, plaintiff's version is reasonable. Further, since defendants' and plaintiff's interpretations are opposing yet reasonable, summary judgment is inappropriate.

 Collective Bargaining Agreements are construed according to traditional contract principles so long as application of those principles do not conflict with federal labor policy. *United Steelworkers v. Newman–Crosby Steel, Inc.,* 822 F.Supp. 862 (D.R.I.1993). Contract interpretation presents, in the first instance, a question of law for the court to decide. *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1083 (1st Cir.1989). First, the court must look to the explicit language of the CBA and read the pertinent provisions in the context of the agreement as a whole. *United Steelworkers of America, AFL—CIO v. Newman–Crosby Steel, Inc.,* 822 F.Supp. 862 (D.R.I.1993). If, on its face, the contract appears ambiguous, the court must then consider extrinsic or parol evidence to determine the intent of the parties. *Id.* Ambiguity exists where the language can support a reasonable difference of opinion as to the meaning of the words used and the obligations undertaken. *Fashion House,* 892 F.2d at 1083. Where there is no ambiguity the contract is for the court to construe. *Id.* However, where the language used is incomplete or ambiguous, the substance of the agreement may become a question of fact for the jury. *Id.*

Defendants argue that the CBA is not ambiguous. Article 18 § 6(a) specifically addresses hiring preferences for vacancies in the Diagnostic Imaging Department and states in pertinent part:

> *Technical Bargaining Unit*—Applicants for the vacancy will be given preference by seniority in order of department, then seniority group, then Hospital-wide **except for the department of Diagnostic Imaging, which shall be by seniority group, department, then Hospital-wide.** (emphasis added).

Defendant maintains that the language of this provision clearly provides a preference for a member of a seniority group over nonmembers and since plaintiff was not a seniority group member and Ms. Ouelette was, it is clear that Ms. Ouelette should have been preferred over plaintiff.

 Assuming that plaintiff was not a member of a seniority group, this is a plausible reading of this portion of the provision. This section of the CBA clearly establishes that seniority group members should be given preference over nonmembers. However, the first clause of the provision states: "Applicants for the vacancy will be given preference by seniority . . .," and then goes on to list what appears to be a second set of preferences and the order in which they should be considered. This suggests that seniority is paramount and, in bidding for a vacancy in the Department, where seniority may be equal, those in the seniority group should be preferred. Therefore, because the language of Article 18 § 6(a) can be read as reasonably supporting both defendants' and plaintiff's positions, I find the provision to be ambiguous as to whether a seniority group member is to be afforded a first or second line preference.

 Additionally, since it is ambiguous as to whether seniority or seniority group status is the threshold inquiry, it seems clear that plaintiff has standing to bring his claim. When applying for bargaining unit vacancies, plaintiff's seniority is determined according to the terms of Article 18 § 6(a) which requires that he be "credited with the experience accrued only through the first-line supervisory level." Therefore, the extent to which his seniority was credited and was determinative in filling the vacancy for which plaintiff applied is governed by this provision of the CBA, which has vested in him certain legal rights " 'the invasion of which creates standing.' " *Woosley,* 944 F.2d at 317 (quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

The parties have submitted extrinsic evidence on the issue of whether seniority or seniority group is the first consideration in filling Department vacancies. Defendants offer that the Union, RIH, and Lifespan, who were the parties to the CBA, agree on the interpretation of Article 18 § 6(a) as evidenced by the result of the grievance procedure which upheld the Union's interpretation and awarded the position to Ms. Ouelette, a bargaining unit member with less seniority than plaintiff. However, plaintiff offers particularly compelling evidence that § 6(a) mandates that seniority be the first preference and seniority group the second.

■ Where the terms of the CBA are ambiguous, a court may consider prior interpretations of the contract by the parties and the conduct of the parties that may bear upon that interpretation. *See Newman–Crosby*, 822 F.Supp. at 865. In *Newman–Crosby*, plaintiffs were a class of retired employees seeking to enforce a section of a CBA that provided for life insurance benefits to retirees. The Company argued that those benefits could be terminated when the CBA creating them terminated. The court looked to the explicit language of the CBA and found that it was silent as to how long the Company was required to pay for those benefits. Therefore, the court looked to extrinsic evidence of the parties intent, including the statements and conduct of various agents of the Company who had interpreted that provision of the CBA in the past as providing lifetime benefits. The court also noted that during subsequent CBA negotiations, the Company's attorney resisted discussion of retiree benefits and indicated that retirees were already taken care of for their respective lifetimes. The Company's Personnel Director and Vice President of Industrial Relations made similar statements to retiring employees, saying that they no longer had to worry about life insurance. The court considered these past interpretations of the CBA by the Company's agents to fortify a finding that, contrary to the interpretation that the Company was then urging, the parties to the CBA had intended for benefits to continue beyond the life of the CBA that had created them.

Similarly here, plaintiff has offered evidence that in the past, when filling bargaining unit vacancies in the Department, the relevant Hospital and Union representatives interpreted Article 18 § 6(a) to mean that seniority was the threshold inquiry and not seniority group. Twice before, when considering applications for vacancies, the person responsible for hiring, after consultation with the Department's Union representative, hired supervisory personnel who had more seniority than bargaining unit members who had applied. The hiring of those supervisors was never grieved by the Union. It is significant that those entrusted by the Hospital and the Union to interpret provisions relevant to hiring did so in a way contrary to the interpretation that defendants now urge.

Defendants respond that these prior interpretations merely show that individuals can make mistakes in interpretation and that those mistakes should not reflect on the intent of the parties and the express language of the CBA. This, of course, assumes that the language of the CBA is unambiguous. Where the personnel entrusted with hiring decisions governed by the CBA read the plain language of the agreement and interpreted it in three distinct instances to mean that the most senior applicant should be hired regardless of membership in a seniority group, it certainly suggests that the language itself is susceptible to differing but reasonable interpretations even if it turns out that one of those interpretations was incorrect.

As discussed above, I find the language of Article 18 § 6(a) to be ambiguous and the extrinsic evidence offered by the parties has not clarified the intent of the parties on the issue of whether seniority or seniority group is the first line of preference in hiring. However, if it is assumed that the relevant language is unambiguous

and the threshold preference is for those in a seniority group, and among those applicants seniority is determinative, then the issue is whether plaintiff is a member of a seniority group. Defendant argues that plaintiff cannot be a member of a seniority group. Of course, plaintiff holds the contrary view.

 Defendant maintains that plaintiff cannot be a member of a seniority group because seniority groups are comprised only of members of bargaining units. In support of this position, defendant points to Article 21 of the CBA entitled "Seniority Groups—Technical Bargaining Unit" and argues that "by definition then, seniority groups comprise the Technical Bargaining Unit." Def.s' Mem. at 4. Further, plaintiff is not a member of a technical bargaining unit and, therefore, cannot be a member of a seniority group. *See Id.*

Plaintiff counters that Article 21 lists divisions that comprise seniority groups only by a general designation, i.e., CT Scan, and does not delineate which positions are covered within each division. Article 21 states in pertinent part:

Article 21 Seniority Groups—Technical Bargaining Unit

\* \* \* \* \* \*

§ 2 Technical Groups

Group 1: Radiologic Technologist (includes Diagnostic Radiology, CT Scan . . .)

While it is true that the division of CT Scan is included in Group 1 of the Technical Groups, and it is not specified in that particular listing that supervisory CT Scan Technologists are excluded, it is unreasonable to ignore the title of the article, which addresses seniority groups in conjunction with technical bargaining units. Article 4 of the CBA, which lists RIH's Technical Bargaining Unit positions, reflects the same positions as listed in Article 21, albeit in more detail, and supports a reading of Article 18 as addressing only those positions that are part of a technical bargaining unit. Further, the seniority rights of all hospital personnel are addressed by Article 11, entitled "Seniority." There would be little sense for the parties to have created both a right of seniority in general, · regardless of the capacity in which the employee works, and a right to be part of a seniority group in particular if seniority groups were not meant to delineate something other than seniority alone. Because Article 4 sets out in detail those positions that are technical bargaining unit positions, it is reasonable to say that whenever the term "technical bargaining unit" is used thereafter, it should include those positions and no others. Plaintiff's position is not included under Article 4 and it would be unreasonable to interpret Article 21, which lists CT Scan as included in Seniority Group 1, as including a position within the CT Scan Division that was not also a bargaining unit position. Therefore, although a reading of Article 18 § 6(a) is not clear as to the definition of "seniority group," a reading of other related provisions in the CBA clarifies the meaning of that term and resort to extrinsic evidence is unnecessary. Since I find the term "seniority group" to be unambiguous and inclusive of only those in technical bargaining units and plaintiff is not in such a unit, plaintiff is not a member of a seniority group.

 Although I find that by the unambiguous terms of the CBA plaintiff is not a member of a seniority group, his status as such is not relevant if plaintiff's interpretation of Article 18 § 6(a) prevails. Because I find that § 6(a) is ambiguous and not clarified sufficiently by the extrinsic evidence presented, I recommend that defendants' motion for summary judgment be denied.

### Conclusion

For the reasons stated, I recommend that defendant Union's Rule 12(b)(1) motion to dismiss be denied. I also recommend that the Rule 56 motion for summary judgment brought by all the defendants be denied. Any objection to

this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed.R.Civ.P. 72(b); Local Rule 32. Failure to file timely, specific objections to the report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).

Feb. 18, 1999.